1  COOLEY LLP
   JEFFREY M. GUTKIN (216083)          COOLEY LLP
2  (jgutkin@cooley.com)                JORGE L. SARMIENTO (*Pro Hac Vice* Pending)
   AARTI REDDY (274889)                (jsarmiento@cooley.com)
3  (areddy@cooley.com)                 55 Hudson Yards
   AMY M. SMITH (287813)               New York, NY 10001-2157
4  (amsmith@cooley.com)                Telephone:    +1 212 479 6000
   MORGAN LEWIS (322205)               Facsimile:    +1 212 479 6275
5  (melewis@cooley.com)
   JULIA M. IRWIN (352861)
6  (jirwin@cooley.com)
   3 Embarcadero Center, 20th Floor
7  San Francisco, California 94111-4004
   Telephone:    +1 415 693 2000
8  Facsimile:    +1 415 693 2222
   Attorneys for Defendant
9  LinkedIn Corporation

10                        UNITED STATES DISTRICT COURT

11                     NORTHERN DISTRICT OF CALIFORNIA

12                              SAN JOSE DIVISION

13

14
   L.B. individually and on behalf of all others    Case No. 5:24-cv-06832-EJD
15  similarly situated,
                                                    **DEFENDANT LINKEDIN CORPORATION'S**
16              Plaintiff,                          **MOTION TO DISMISS PLAINTIFF'S**
                                                    **COMPLAINT**
17        v.
                                                    Date:      January 9, 2025
18  LINKEDIN CORPORATION,                           Time:      9:00 a.m.
                                                    Dept:      Courtroom 4, 5th Fl.
19              Defendant.                          Judge:     Edward J. Davila
                                                    Trial Date: TBD
20                                                  Date Action Filed:  August 20, 2024

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................. 3

    A.     The Parties .......................................................................................... 3

    B.     LinkedIn's Insight Tag ........................................................................ 3

    C.     ReflexMD's Use of LinkedIn's Insight Tag ...................................... 4

III.    ARGUMENT ..................................................................................................... 4

    A.     Plaintiff Fails to State a Claim Under CIPA § 631 ........................... 4

        1.     LinkedIn Is Not Liable Under CIPA Because It Was a Party to the Alleged Communications, Not a Third-Party Eavesdropper. ................... 5

        2.     Plaintiff's Clause-One Claim Fails for Additional Reasons. ................... 10

        3.     Plaintiff's Claim Under CIPA's Second Clause Has Additional Defects ................................................................................. 10

        4.     Plaintiff's Claims Under CIPA's Third Clause Have Further Flaws. ....... 13

    B.     Plaintiff Fails to State a Claim Under CIPA § 632 ........................... 14

    C.     Plaintiff's Section 631 and 632 Claims Also Fail Because She Has Not Alleged Interception of "Content." ............................................. 16

    D.     Plaintiff Fails to State a Claim for Invasion of Privacy Under the California Constitution. ....................................................................... 17

        1.     Plaintiff Fails to Allege Any Protected Privacy Interest. ......................... 18

            a.     Plaintiff's Generalized Allegations That Consumers' Information Is Shared with LinkedIn Do Not State a Claim. ....... 18

            b.     Plaintiff Fails to Allege an Informational Privacy Interest. .......... 19

            c.     Plaintiff Fails to Allege an Autonomy Privacy Interest. ............... 20

        2.     Plaintiff Fails to Allege a Reasonable Expectation of Privacy in Her Online Commercial Activity. ................................................................... 21

        3.     The Routine Commercial Behavior Alleged Is Not Highly Offensive as a Matter of Law. ................................................................... 22

IV.     CONCLUSION ................................................................................................ 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.S. v. SelectQuote Ins. Servs.*,
  2024 WL 3881850 (S.D. Cal. Aug. 19, 2024) ........................................................ 15

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................ 11, 12

*Byars v. Hot Topic, Inc.*,
  656 F. Supp. 3d 1051 (C.D. Cal . 2023) ................................................................ 6

*Cabral v. Supple, LLC*,
   2012 WL 12895825 (C.D. Cal. Oct. 3, 2012) ...................................................... 19

*Cal. Teachers Ass'n v. Governing Bd. of Rialto Unified Sch. Dist.*,
  14 Cal.4th 627 (1997) ........................................................................................ 15

*Campbell v. Allied Van Lines Inc.*,
  410 F.3d 618 (9th Cir. 2005) .............................................................................. 17

*Campbell v. Facebook Inc.*,
  77 F. Supp. 3d 836 (2014) .................................................................................. 16

*In re Carrier IQ, Inc.*,
  78 F. Supp. 3d 1051 (N.D. Cal. 2015) ................................................................ 16

*Cody v. Ring LLC*,
  718 F. Supp. 3d 993 (N.D. Cal. Feb. 22, 2024) .............................................. 9, 12

*Comm. to Def. Reprod. Rights v. Myers*,
  625 P.2d 779 (Cal. 1981) .................................................................................... 20

*Cousin v. Sharp Healthcare*,
  681 F. Supp. 3d 1117 (S.D. Cal. 2023) .............................................................. 23

*D'Angelo v. FCA US, LLC*,
  2024 WL 1625771 (S.D. Cal. Mar. 28, 2024) ................................................ 21, 23

*D'Angelo v. Penny OpCo, LLC*,
  2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ...................................................... 22

*Doe I v. Google LLC*,
  2024 WL 3490744 (N.D. Cal. July 22, 2024) ............................................... *passim*

*Doe v. Beard*,
  63 F. Supp. 3d 1159 (C.D. Cal. 2014) ................................................................ 24

Cooley LLP
Attorneys at Law
San Francisco

*Doe v. Meta Platforms, Inc.*,
   690 F. Supp. 3d 1064 (N.D. Cal. 2023) ................................................................. 16

*Doe v. Microsoft Corp.*,
   2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) ................................................... 15

*Esparza v. Gen Digital Inc.*,
   2024 WL 655986 (C.D. Cal. Jan. 16, 2024) ......................................................... 12

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) ................................................................................... 6

*Fogelstrom v. Lamps Plus, Inc.*,
   195 Cal. App. 4th 986 (2011) ........................................................................... 24-25

*Goodman v. HTC America, Inc.*,
   2012 WL 2412070 (W.D. Wash. June 26, 2012) ................................................. 25

*In re Google Assistant Privacy Lit.*,
   457 F. Supp. 3d 797 (N.D. Cal. 2020) ................................................................. 13

*In re Google Location Hist. Litig.*,
   428 F. Supp. 3d 185 (N.D. Cal. 2019) ..................................................... 15, 16, 21

*In re Google Location History Litig.*
   514 F. Supp. 3d 1147 (N.D. Cal. 2021) ............................................................... 26

*Hammerling v. Google LLC*,
   2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ......................................... 18, 23, 24

*Hammerling v. Google LLC*,
   615 F. Supp. 3d 1069 (N.D. Cal. 2022) ............................................................... 21

*Heiting v. Athenahealth, Inc.*,
   2024 WL 3761294 (C.D. Cal. July 29, 2024) ........................................................ 8

*Heiting v. Taro Pharm s. USA, Inc.*,
   2023 WL 9319049 (C.D. Cal. Dec. 26, 2023) ..................................................... 13

*Hill v. Nat'l Collegiate Athletic Ass'n*,
   7 Cal. 4th 1 (1994) .......................................................................................... *passim*

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................................... 23

*Jackson v. LinkedIn Corp.*,
   2024 WL 3823806 (N. D. Cal. Aug. 13, 2024) ...................................................... 9

*Javier v. Assurance IQ, LLC*,
   649 F. Supp. 3d 891 (N.D. Cal. 2023) ............................................................... 8, 9

iii

*Joffe v. Google, Inc.*,
  746 F.3d 920 (9th Cir. 2013).................................................................. 5

*Johnson v. Blue Nile, Inc.*,
  2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) .................................... 6

*Jones v. Peloton Interactive, Inc.*,
  2024 WL 1123237 (S.D. Cal. Mar. 12, 2024) ............................. 6, 18

*Jones v. Peloton Interactive, Inc.*,
  2024 WL 3315989 (S.D. Cal. July 5, 2024) ....................................... 9

*Licea v. Am. Eagle Outfitters, Inc.*,
  659 F. Supp. 3d 1072 (C.D. Cal. 2023)............................................. 6

*Love v. Ladder Fin., Inc.*,
  2024 WL 2104497 (N.D. Cal. May 8, 2024) ............................. 6, 7, 11

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...................................... 17, 23

*Martin v. Sephora USA, Inc.*,
  2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) ................................... 6

*Mastel v. Miniclip SA*,
  549 F. Supp. 3d 1129 (E.D. Cal. 2021)................................... 11, 13

*In re Meta Healthcare Pixel Litig.*,
  713 F. Supp. 3d 650 (N.D. Cal. 2024) ............................................ 23

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
  2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ............................... 15

*Ojeda v. Kaiser Permanente Int'l, Inc.*,
  2022 WL 18228249 (C.D. Cal. Nov. 29, 2022)......................... 23, 24

*People v. Superior Court (Smith)*,
  70 Cal. 2d 123 (1969) ................................................................... 14

*Pettus v. Cole*,
  49 Cal. App. 4th 402 (1996)........................................................... 20

*Ramos v. The Gap Inc.*,
  2024 WL 4351868 (N.D. Cal. Sept. 30, 2024) ............................. 10

*Revitch v. New Moosejaw, Inc.*,
  2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)............................... 16

*Ribas v. Clark*,
  38 Cal. 3d 355 (1985) .................................................................... 11

*Rodriguez v. Google LLC*,
  2022 WL 214552 (N.D. Cal. Jan. 25, 2022) .......................................................................... 12

*Saeedy v. Microsoft Corp.*,
  2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) ................................................................... 22

*Saleh v. Nike, Inc.*,
  562 F. Supp. 3d 503 (C.D. Cal. 2021) .................................................................................. 21

*Smith v. Fresno Irrigation Dist.*,
  84 Cal. Rptr. 2d 775 (1999) ................................................................................................. 20

*St. Aubin v. Carbon Health*,
  2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .................................................................. 10, 19

*Swarts v. Home Depot, Inc.*,
  689 F. Supp. 3d 732 (N.D. Cal. 2023) ............................................................................ *passim*

*Thomas v. Papa Johns Int'l, Inc.*,
  2024 WL 2060140 (S.D. Cal. May 8, 2024) ......................................................................... 21

*United States v. Carr*,
  513 F.3d 1164 (9th Cir. 2008) ............................................................................................... 5

*Valenzuela v. Super Bright LEDs Inc.*,
  2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) ....................................................................... 8

*Vartanian v. VW Credit, Inc.*,
  2012 WL 12326334 (C.D. Cal. Feb. 22, 2012) .................................................................... 14

*Vita v. New England Baptist Hospital*,
  2024 WL 4558621, . (Mass. October 24, 2024) ................................................................... 17

*In re Vizio Inc. Consumer Priv. Litig.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017) ................................................................................ 12

*Warden v. Kahn*,
  99 Cal. App. 3d 805 (1979) .................................................................................................... 6

*Westron v. Zoom Video Comm'ns*,
  2023 WL 3149262 (N.D. Cal. Feb. 15, 2023) ...................................................................... 18

*Williams v. What If Holdings, LLC*,
  2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ............................................................. 5, 6, 7

*In re Yahoo Mail Litig.*,
  7 F. Supp. 3d 1016 (N.D. Cal. 2014) ............................................................................ 21, 23

*Yale v. Clicktale, Inc.*,
  2021 WL 1428400 (N.D. Cal. April 15, 2021) ...................................................................... 6

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
COMPLAINT (CASE NO. 5:24-CV-06832)

*Yockey v. Salesforce, Inc.*,
　2024 WL 3875785 (N.D. Cal. Aug. 16, 2024) ........................................................... 9, 16

*Yockey v. Salesforce, Inc.*,
　688 F. Supp. 3d 962 (N.D. Cal. 2023) ......................................................................... 8

**Statutes**

Cal. Penal Code
　§ 631 ................................................................................................................... *passim*
　§ 632 ................................................................................................................... *passim*
　§ 637.7 ....................................................................................................................... 15

**Other Authorities**

California Constitution, Art. I, Sec. 1 ............................................................................. 17

Federal Rules of Procedure 12(b)(6) ........................................................................... 1, 4

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on January 9, 2025 at 9 a.m. in Courtroom 4 of the above-captioned Court, Defendant LinkedIn Corporation ("LinkedIn") will and hereby does move this Court, pursuant to Federal Rules of Procedure 12(b)(6) for an order dismissing Plaintiff L.B.'s ("Plaintiff") Complaint with prejudice. The Motion is based upon the below Memorandum and Points and Authorities; all papers on file; the Request for Judicial Notice and supporting declaration of Aarti Reddy ("Reddy Declaration") and such further argument that the Court may consider.

<b>ISSUES TO BE DECIDED</b>

Whether the Court should dismiss Plaintiff's California Invasion of Privacy ("CIPA") § 631 and § 632 and California constitutional claims in the Complaint ("Complaint") because she has failed to state a claim under Rule 12(b)(6).

## I. INTRODUCTION

This lawsuit represents yet another attempt by the plaintiffs' bar to attack routine website analytics tools as a criminal wiretap. Plaintiff L.B. claims that, when she and class members visited certain webpages on ReflexMD's website to browse for information about a weight loss drug, information about their interactions with that website was transmitted to LinkedIn. LinkedIn offers its advertisers the option to install a web pixel or "Insight Tag" (in LinkedIn's parlance) to aid their advertising efforts. According to Plaintiff, because ReflexMD allegedly installed the Insight Tag on certain webpages, LinkedIn should be held liable under California's Invasion of Privacy Act ("CIPA") and for invasion of privacy under the California Constitution. Plaintiff's claims are meritless and the Court should dismiss this Complaint with prejudice.

***Section 631***. Plaintiff's claim under Section 631 fails for multiple, independent reasons. Plaintiff alleges that LinkedIn violated the first three clauses of the statute, because LinkedIn "intentionally taps, or makes any unauthorized connection . . . with any telegraph or telephone wire, line, cable or instrument," (clause one), willfully intercepted Plaintiff's communications with ReflexMD and read, attempted to read, or learned their contents (clause two) and used their contents (clause three). *See* Cal. Penal Code § 631. ***First***, nothing in Plaintiff's pleading alleges that LinkedIn acted as anything more than a ***vendor*** of an advertising tool that received information for

1    ReflexMD's benefit.  Accordingly, LinkedIn is a party to the communication that has no liability.

2    **Second**, Plaintiff's CIPA clause-one claim also fails because, as courts have uniformly held, such

3    a claim is not cognizable as to internet communications.  **Third**, Plaintiff also failed to make any

4    factually supported allegation or, in some cases any allegation at all, regarding several elements of

5    her clause-two claim. Plaintiff did not sufficiently allege that LinkedIn read or attempted to read

6    these alleged ReflexMD communications, that it intercepted them "in transit," or that LinkedIn

7    acted willfully.  **Lastly**, Plaintiff's CIPA clause-three claim also fails because it rests on the flawed

8    clause-one and clause-two claims and Plaintiff's allegations of "use" are conclusory and premised

9    on generalities about LinkedIn's business.  The Court should dismiss this claim with prejudice.

10      *Section 632.*  Plaintiff's claim under Section 632 of CIPA fares no better.  To survive

11   dismissal, Plaintiff must allege that LinkedIn intentionally recorded a "confidential"

12   communication by means of an "amplifying or recording device."  *See* Cal. Penal Code § 632.

13   Nothing in her pleading plausibly avers that LinkedIn acted with the requisite intent—indeed, her

14   allegations regarding LinkedIn's state of mind merely parrot CIPA's statutory language.  Further,

15   as many courts have held, software code like the Insight Tag does not qualify as a "device" under

16   the statute.  Plaintiff also does not plausibly allege that her alleged communications were

17   "confidential."  It is well settled that internet communications are presumptively ***not*** confidential,

18   and nothing in Plaintiff's pleading rebuts that presumption.

19      Finally, neither of Plaintiff's CIPA claims can survive dismissal because she does not

20   plausibly allege that the underlying data purportedly transmitted to LinkedIn via the Insight Tag

21   qualifies as a "communication" under statute.

22      *Invasion of Privacy.*  Plaintiff does not adequately plead a violation of California's

23   constitutional right to privacy.  The claim fails both because it is premised on her defective

24   wiretapping claim, and because it relies on generalities regarding unspecified "consumers'"

25   purported information.  Although Plaintiff alleges that she purchased a weight loss drug from

26   ReflexMD, a close review of her pleading reveals that the allegations regarding interception of

27   ***Plaintiff's own*** information are sparse and vague.  The complaint also contradicts any claim that

28   Plaintiff had a reasonable expectation of privacy in information that she voluntarily input on

1  ReflexMD's website after being fully apprised that LinkedIn may receive information about her

2  interactions with other websites.  Setting aside all of these defects, Plaintiff's boilerplate pleading,

3  even as to the information shared from other supposed "consumers," does not clear the high bar for

4  alleging a "highly offensive" intrusion sufficient to support a constitutional claim.

5       For all of these reasons, the Complaint should be dismissed with prejudice.

6  **II.   BACKGROUND**

7       **A.   The Parties**

8       LinkedIn is a Delaware corporation headquartered in Sunnyvale, California.  The company

9  has created "the world's largest professional network on the internet," which provides a valuable

10  "tool to help users find jobs or expand their professional network."  (Compl. ¶ 14.)

11       Plaintiff L.B. alleges she resides in Florida and claims to have "maintained a LinkedIn

12  account at all relevant times."  (*Id.* ¶ 5.)  Plaintiff alleges that when she "created her LinkedIn

13  account she agreed to LinkedIn's User Agreement," (*Id.* ¶ 5.), and that "[w]hen first signing

14  up . . . users agree to . . . [LinkedIn's] Privacy Policy and [] Cookie Policy." (*Id.* ¶ 29.)  She further

15  alleges that she "purchased Semaglutide from [ReflexMD] in approximately June 2024."  (*Id.* ¶ 6.)

16       **B.   LinkedIn's Insight Tag**

17       LinkedIn enables advertisers to run advertising campaigns through its Marketing Solutions

18  services.  (*Id.* ¶¶ 14-15.)  Using these services, advertisers can target their advertisements to

19  particular audiences based on certain audience characteristics.  (*Id.* ¶ 15.)  LinkedIn's Insight Tag

20  is a piece of JavaScript code that advertisers can install on their websites to enable features like

21  campaign reporting to facilitate their advertising and marketing campaigns through LinkedIn.  (*Id.*

22  ¶¶ 21-22; *see also* Declaration of Aarti Reddy in Supp. Def. LinkedIn Corp. Mot. to Dismiss

23  ("Reddy Decl.") Ex.  A.)  After an advertiser installs the Insight Tag on its website and a LinkedIn

24  member visits that website, the member's browser sends certain information about that visit to

25  LinkedIn.  (*Id.* ¶¶ 23-26.)  Some of that information is then allegedly sent to LinkedIn's Marketing

26  Solutions advertising systems, where it is provided to advertisers to optimize their advertising

27  campaigns, facilitate advertising retargeting, or learn more about their audiences.  (*Id.* ¶¶ 15-18.)

28  By helping advertisers analyze their website visitor information, LinkedIn enables those advertisers

to target their advertisements to the most receptive LinkedIn members.  (*Id.* ¶¶ 18-19.)  Notably, while Plaintiff contends that LinkedIn "obtain[s]" "personal information and communications" (*id.* ¶ 17) to help advertisers "target . . . account holders for advertising" (*id.* ¶¶ 27), nowhere does she plausibly allege that LinkedIn uses any such data for its own independent purposes.

### C.    ReflexMD's Use of LinkedIn's Insight Tag

Plaintiff alleges that "ReflexMD is an online healthcare operator that offers Semaglutide prescriptions," (*id.* ¶ 35.), and that "Semaglutide is not available over-the-counter," such that "consumers must complete a survey in order to see if they qualify for the medication."  (*id.* ¶ 36.)  According to Plaintiff, ReflexMD installed the Insight Tag on pages through which members complete this survey.  (*See id.* ¶ 43.)  Plaintiff further alleges that as a LinkedIn member completes the survey on ReflexMD's website, the Insight Tag on its pages sends various information to LinkedIn, including survey responses and a cookie identifier for the member.  (*Id.* ¶¶ 39-45).

Plaintiff contends that, while purchasing Semaglutide in June 2024, her activity on ReflexMD's website was transmitted to LinkedIn via the Insight Tag and that at the time, she was not aware that ReflexMD had installed the Insight Tag on its website.  (*Id.* ¶ 6.)  Plaintiff does not identify any specific survey responses she purportedly transmitted to ReflexMD, nor does she contend that she received targeted advertising from either ReflexMD or LinkedIn or that LinkedIn actually used ***her*** data in any way.  Instead, she merely alleges that she "discover[ed]" ReflexMD's use of LinkedIn's Insight Tag "around July 2024," under unspecified circumstances.  (*Id.* ¶ 47.)

### III.    ARGUMENT

Plaintiff brings two claims under CIPA and another for constitutional Invasion of Privacy on behalf of herself and a class of all LinkedIn members who purchased Semaglutide on www.reflexmd.com.  Plaintiff fails to state a claim as to any cause of action under Rule 12(b)(6).

### A.    Plaintiff Fails to State a Claim Under CIPA § 631

Plaintiff premises her Section 631 claim on CIPA's first three clauses.  (Compl. ¶¶ 65-67). CIPA's first clause applies to any person who intentionally taped, electrically or otherwise, Plaintiff's transmissions.  Cal. Penal Code § 631(a).  CIPA's second clause applies to "[a]ny person who willfully and without the consent of all parties to the communication, or in any unauthorized

manner, reads, or attempts to read, or to learn the contents or meaning of any . . . communication while the same is in transit . . . within this state." Cal. Penal Code § 631(a). CIPA's third clause applies to any person "who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information" obtained in violation of clauses one or two. *Id*. Her claim under each of these theories fails for multiple reasons, each of which is dispositive.[1]

**First,** as an initial and dispositive matter, Plaintiff cannot proceed under any of her three theories of liability because her Section 631 claim is barred by the party exception. As a vendor that provided a tool to assist ReflexMD with its marketing and advertising efforts, LinkedIn was a party to Plaintiff's alleged communications with ReflexMD, not a third-party eavesdropper.

**Second**, Plaintiff's claims fail under CIPA's first clause because this clause "concerns telephonic wiretapping specifically, which does not apply to the context of the internet." *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022).

**Third**, Plaintiff also fails to plausibly allege many of the requisite elements of her claim under CIPA's second clause. Specifically, her Complaint is devoid of factual allegations establishing that (1) LinkedIn "read or attempted to read, or to learn the contents or meaning of" any purported communication, (2) that any alleged interception occurred while the communication was "in transit," (3) that interception occurred while the Plaintiff's communication with ReflexMD was in transit "within this state," and that (4) any such interception was "willful."

**Fourth**, Plaintiff's claim under CIPA's third clause fails because it is entirely derivative of her deficient clause-one and clause-two claims, and because she has not plausibly pled that LinkedIn "use[d] or attempted to use" the challenged information. Cal. Penal Code § 631(a).

### 1.    LinkedIn Is Not Liable Under CIPA Because It Was a Party to the Alleged Communications, Not a Third-Party Eavesdropper.

To begin, all of Plaintiff's CIPA claims fail under CIPA's party exception. It is well

---

[1] *United States v. Carr*, 513 F.3d 1164, 1168 (9th Cir. 2008) (citation omitted); *see also Joffe v. Google, Inc.*, 746 F.3d 920, 935 (9th Cir. 2013) (stating that rule of lenity applies even to criminal statutes raised in civil cases, and may apply to Federal Wiretap Act).

established that CIPA applies "only to eavesdropping by a third-party and not to recording by a participant to a conversation." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) (citing *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979)). Plaintiff's bare pleading fails to allege that LinkedIn acted as anything more than an extension of and service provider to ReflexMD, which was a party to the alleged communications. The leading case on this topic, *Graham v. Noom*, analyzed a similar theory and held that a third-party vendor did not violate CIPA where it merely "provide[d] a software service that captures its clients' data . . . and allow[ed] the clients to analyze their data" but had not "intercepted and used the data itself." 533 F. Supp. 3d 832, 832 (N.D. Cal. 2021). Rather, the vendor operated as "an extension of Noom," the website operator, offering "a tool . . . that allows ***Noom*** to record and analyze ***its own data***." *Id.* (emphases added). Numerous courts across this district have endorsed this reasoning. *See, e.g.*, *Love v. Ladder Fin., Inc.*, 2024 WL 2104497, at *1 (N.D. Cal. May 8, 2024) (finding *Graham* analysis dispositive of CIPA claims); *Doe I v. Google LLC*, 2024 WL 3490744, at *6 (N.D. Cal. July 22, 2024) (applying Graham); *Williams*, 2022 WL 17869275, at *3.[2]

The same analysis warrants dismissal here. Plaintiff has not pled that LinkedIn acted as

---

[2] *See also Jones v. Peloton Interactive, Inc.,* 2024 WL 1123237, at *3 (S.D. Cal. Mar. 12, 2024) (dismissing CIPA claim where third-party vendor "acts as an extension of Peloton, providing a tool that allows Peloton to 'record and analyze its own data in aid of [Peloton's] business'"); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1083 (C.D. Cal. 2023) (third-party software provider was subject to party exception because software functioned more like a tape recorder, given it was not alleged to have harvested data for its own use); *Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *1, *3 (N.D. Cal. April 15, 2021) (vendor providing "Event Triggered Recorder" software was not a third-party eavesdropper since it "allows its clients to monitor their website traffic"); *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *1 (N.D. Cal. Apr. 8, 2021) (similar); *see also Martin v. Sephora USA, Inc.,* 2023 WL 2717636, at *13 (E.D. Cal. Mar. 30, 2023) (vendor not a third-party eavesdropper because it acted "as an extension of the company"); *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1068 (C.D. Cal . 2023) (similar).

anything more than an extension of ReflexMD. Indeed, both her pleading and documents incorporated by reference in the Complaint establish that the Insight Tag is ***installed by website owners.*** **(**Reddy Decl. Ex. A cited in Compl. n. 17 (describing how advertisers can "manually install the tag . . . yourself[.]") (emphasis added); *see also* Compl. ¶ 22 (explaining that the "Insight Tag is a JavaScript-based code which allows for the installation of its software")). She plainly alleges LinkedIn represents to Insight Tag users that the tag is "[a] simple code snippet added to [a] website [that] can ***help you*** optimize ***your campaigns***, retarget ***your website visitors***, and learn more about ***your audiences***." (Compl. ¶ 21.) Her allegations then focus on how these tools "***allow[] marketers*** . . . to target potential customers"; "***allow advertisers*** to select specific characteristics to help them reach their ideal audience" and "***allow potential advertisers*** to '[b]uild strategic campaigns.'" (Compl. ¶¶ 15, 18.) Nowhere does Plaintiff allege that LinkedIn shared her data (or any ReflexMD data) with other advertisers or that it used it for any independent purpose. At most, Plaintiff contends that the Insight Tag generally sends certain cookies that allow LinkedIn to identify the user associated with certain Insight Tag transmissions, and then offers a conclusory assertion that LinkedIn can use this information to target ads to account holders. (Compl. ¶¶ 25-27, 79.) This bald allegation is not supported by any well-pled facts, and in fact, it is contradicted by the other allegations demonstrating that LinkedIn merely provides data to advertising customers to facilitate their own ad campaigns. (Compl. ¶¶ 15, 18, 21.) Accordingly, the Complaint alleges only that LinkedIn collected and maintained information received ***at the direction*** of ReflexMD, to enable advertising requested ***by*** ReflexMD. Just as in *Graham*, *Love*, *Williams*, and other cases, Plaintiff has failed to allege that LinkedIn's Insight Tag was anything more than a mere "tool that [defendant] used to record its communications with plaintiff." *Williams*, 2022 WL 17869275, at *3; *see also Love v. Ladder Fin., Inc.*, 2024 WL 2104497, at *1 (N.D. Cal. May 8, 2024) ("[P]laintiffs have only alleged that FullStory provides a tool that allows Ladder to record, track, and analyze the interactions that users have with its own site.").

For many courts, the analysis begins and ends with *Graham*. Plaintiff may, however, invoke another line of cases holding that an analytics provider is not an extension of a defendant if it has "the capability to use" communications for any other purpose than supporting the website operator.

*Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023). Even if the Court adopted the *Javier* framework, Plaintiff's claims would still fail because she has not alleged that LinkedIn is capable of using information received from ReflexMD for its own independent purposes.

As explained above, rather than alleging capability of use, Plaintiff's allegations focus on how the Insight Tag "allows marketers and advertisers" to conduct targeted advertising. At most, Plaintiff alleges that unspecified "personal information and communications obtained by LinkedIn are used to fuel various services offered via LinkedIn's Marketing Solutions." (Compl. ¶ 17.) She further alleges, in a general fashion, that the Insight Tag may transmit certain cookies that enable LinkedIn to identify the user and that based on this data, LinkedIn is "able to" target its own users with ads. (Compl. ¶¶ 24-27.) Nowhere does she elaborate on these allegations or plead any facts that render them plausible, let alone allege that she ever saw or received targeted advertising herself. In this way, her pleading does not plausibly allege that LinkedIn is capable of identifying users for its own independent ad targeting purposes. As court after court applying *Javier* has held, a plaintiff must plead **specific facts** to support an inference that a vendor independently used the underlying "communication." For example, in *Heiting v. Athenahealth, Inc.*, 2024 WL 3761294, at *4 (C.D. Cal. July 29, 2024), the Court granted dismissal, observing that the plaintiff's allegations that Salesforce "may record, store, and use" the underlying data and "uses chat data to enhance its own business" were "too general and conclusory to support a reasonable inference that Salesforce had the capability to use the communications for any purpose beyond providing it to Defendant." Multiple courts have similarly dismissed CIPA claims based on allegations of use that are even more detailed than those at issue here. *See, e.g.*, *Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *8 (C.D. Cal. Nov. 27, 2023) (finding plaintiff's allegation that chat vendor had "capability to use its record of [w]ebsite users' interactions" for data analytics and marketing/advertising to consumers "conclusory and insufficient"); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 737-738 (N.D. Cal. 2023) (allegations that defendant "analyz[ed] the data and provid[ed] [] customer data metrics related to each conversation" and "accesse[d] and analyze[d]" those "conversations" were not sufficient to show capability of use); *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 973 (N.D. Cal. 2023) (dismissing CIPA claim that provider "analyzes the

customer-support agent interactions in real time to create live transcripts of communications").[3]

LinkedIn acknowledges that Judge Pitts recently denied a motion to dismiss involving LinkedIn's Insight Tag.  LinkedIn respectfully submits that the Court erred.  The Court dispensed with the vendor argument without rigorous analysis and concluded that the plaintiff in *Jackson* plausibly alleged independent use based on only a few general allegations that the defendant "monetizes the collected data through the sale of ads" and "enables advertisers to target users with relevant content."  *Jackson v. LinkedIn Corp.*, 2024 WL 3823806 (N. D. Cal. Aug. 13, 2024).  But such conclusory allegations are not enough to plead that LinkedIn used data independently, as an eavesdropper, as many courts have held.  *Supra* 7-9.  Here, the Court should not follow *Jackson*'s lead and should instead dismiss her CIPA claims because Plaintiff has not alleged even in a conclusory fashion that LinkedIn has the capability to use her alleged communications for its own purposes, let alone done so with the required specificity.

Finally, even if Plaintiff's sparse allegations regarding LinkedIn's advertising services were sufficient to plead capability of use under *Javier*, her claims would still fail for an independent reason:  None of those allegations are tethered to Plaintiff's alleged communications with ReflexMD.  In *Cody v. Ring LLC*, the Court found allegations of use "conclusory" where they were based on public reporting that the analytics provider "exploited" chat data for "targeted advertising" but said "nothing about **Ring** [defendant website] or about Meta or Kustomer using **Ring** data to

---

[3] By contrast, those courts that have denied dismissal based on *Javier* have done so based on allegations that are far more robust than those pled by Plaintiff.  *See, e.g.*, *Yockey v. Salesforce, Inc.*, 2024 WL 3875785, at *4 (N.D. Cal. Aug. 16, 2024) (finding capability of personal use where plaintiff alleged Salesforce fed chat communications into "Einstein," its "data intelligence platform," to "train the AI models that form the basis of some of [Salesforce's] services"); *Jones v. Peloton Interactive, Inc.*, 2024 WL 3315989, at *4 (S.D. Cal. July 5, 2024) (finding capability of personal use adequately alleged where plaintiff alleged that "Drift analyzes and uses the chat conversations it intercepts [to improve its machine learning technologies] all of which *independently benefits and serves*" Drift).

create targeted advertising."  718 F. Supp. 3d 993, 1003 (N.D. Cal. 2024); *see also Doe v. Google LLC*, 2024 WL 3490744, at *3 (N.D. Cal. July 22, 2024) (dismissing CIPA claims where the complaint "relie[d] heavily on Google's own product descriptions" and lacked allegations as to the use of Google Analytics by the healthcare websites at issue).  The same defect plagues Plaintiff's complaint.  She relies on generic descriptions regarding "the various services offered via LinkedIn Marketing Solutions," and did not adequately allege facts about the challenged website.  (Compl. ¶¶ 14-17.)  Such allegations are not sufficient to state a claim under CIPA, and all three of her CIPA claims should be dismissed for this reason as well.

### 2.    Plaintiff's Clause-One Claim Fails for Additional Reasons.

Plaintiff cannot assert a claim under CIPA's first clause because it is well settled that this provision "prohibits telephonic wiretapping, which does not apply to the internet." *St. Aubin v. Carbon Health*, 2024 WL 4369675, at *4 (N.D. Cal. Oct. 1, 2024) (citation omitted); *Ramos v. The Gap Inc.*, 2024 WL 4351868, at *3 (N.D. Cal. Sept. 30, 2024) ("[C]ourts have consistently interpreted this first clause as applying only to tapping communications over telephones and not through the internet.") (collecting cases).  Plaintiff alleges only internet transmissions: that she accessed ReflexMD's website and that "LinkedIn tracked and intercepted Plaintiff's and Class Members' internet communications while using www.reflexmd.com to purchase Semaglutide." (Compl. ¶¶ 6, 62.)  Her clause-one CIPA claim fails for this reason as well.

### 3.    Plaintiff's Claim Under CIPA's Second Clause Has Additional Defects.

Plaintiff also fails to plead facts establishing various other elements of a claim brought under CIPA's second clause.  Specifically, Plaintiff has not plausibly alleged that LinkedIn: (1) "read or attempted to read" her "communications," (2) while they were in transit, (3) within the state, nor that it (4) did so "willfully."  Each of these failures is dispositive of her claim.

***Read or Attempting to Read.***  Under CIPA's second clause, Plaintiff must at least plausibly allege facts concerning LinkedIn's attempt to "read, or to learn the contents" of any purported communications.  § 631(a).  Plaintiff's conclusory allegation that LinkedIn read or attempted to "read, or learn the contents or meaning of Plaintiff's and Class Members' communications to ReflexMD" is a mere recitation of elements and is not entitled to a presumption of truth.  (Compl.

¶ 66; *see also* ¶ 63 ("Through these interceptions, LinkedIn intended to learn some meaning of the content the visitors requested.")); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

At most, Plaintiff alleges that LinkedIn **received** her alleged communications, not that it read or attempted to learn their contents. (*See* Compl. ¶ 33 (explaining only how "LinkedIn **intercepts and receives**" the challenged information) (emphasis added)). In *James v. Allstate Insurance Company*, for example, the plaintiff alleged that the defendant's analytics provider "recorded the data and store[d] it on its servers." 2023 WL 8879246, at *3 (N.D. Cal. Dec. 22, 2023). The Court found such allegations "insufficient to support a plausible interference [that] [the analytics provider] attempted to read or learn the contents of the communications while in transit." *Id.* Plaintiff's allegations that LinkedIn "obtained" certain data from ReflexMD are similarly deficient. (Compl. ¶ 17.) As in *James*, Plaintiff has not pled any facts creating a plausible inference that LinkedIn read or attempted to learn the contents of her alleged communications with ReflexMD, such as by alleging that she was served ads related to her purchases. *See also Love*, 2024 WL 2104497, at *2 (finding allegation that defendant "may use and share information in an aggregated and de-identified manner" insufficient as it created "no coherent story of how or why FullStory would learn such granular information about users of one of its customers' sites").

Further, an analytics provider that offers a tool to allow customers to process their own data cannot be said to "read" or "learn" the contents of a communication. (Compl. ¶ 22.) If that amounted to a CIPA violation, every software-as-a-service provider would be liable for the use of their tool on any website. Such ubiquitous practices cannot violate CIPA or fit within *Ribas v. Clark*, 38 Cal. 3d 355 (1985), the California Supreme Court's seminal "vendor exception" decision.

**In Transit.** "[T]he crucial question under § 631(a)'s second clause is whether [plaintiff] has plausibly alleged that [defendant] read one of his communications while it was still in transit, *i.e.*, before it reached its intended recipient." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021); Section 631(a) (penalizing attempts to "learn the contents . . . of any . . . communication while the same is in transit"). This means that to state a claim under CIPA's second clause, the plaintiff must allege specific facts including "***when*** the interception occurs." *Swarts*, 689 F. Supp. 3d at 746 (emphasis added). While Plaintiff alleges that LinkedIn intercepts

confidential information when website visitors are completing an online survey and later pleads, in a conclusory fashion, that such interceptions occurred "in transit," she alleges no facts that render either of these allegations plausible.  (Compl. ¶¶ 47, 66).  "While Plaintiff[] need not prove [her] theory of interception on a motion to dismiss, Plaintiff[] must provide fair notice to Defendant[] of when [she] believe[s] [Defendant] intercepts [her] communications."  *In re Vizio Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017); *see also Esparza v. Gen Digital Inc.*, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024) (emphasis added) (dismissing CIPA claims involving pixel technology where "Plaintiff fail[ed] to allege specific facts about . . . when the interception took place, and how the interception took place").[4]

**Sent or received within California.**  Plaintiff must also allege that LinkedIn intercepted her communication while it was "being sent from, or received **at any place within this state**."  § 631(a).  She has not done so.  Plaintiff alleges she is domiciled in Florida and has not alleged ReflexMD has any presence in California.  (Compl. ¶ 5.)  She has thus not alleged she had communications to or from the state of California that LinkedIn could have intercepted.

**Willful.**  To state a clause-two claim, Plaintiff must plausibly allege LinkedIn "willfully" obtained and read, or attempted to read, her communications with ReflexMD.  Plaintiff's allegations are little more than a bare recitation of the statute's elements and are not entitled to a presumption of truth.  *Twombly*, 550 U.S. at 570.  Specifically, she pleads that "LinkedIn, willfully and without the consent of Plaintiff and Class Members, read or attempted to read, or learn the contents or meaning of Plaintiff's and Class Members'" and "used or attempted to use the communications and information they received through their tracking technology, including to supply advertising services."  (Compl. ¶¶ 66-67.)  Plaintiff must plead more to state a violation of

---

[4] *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (N.D. Cal. Feb. 22, 2024) (dismissing and finding allegation that "application program is 'plugged into' Ring's website and allows chats to be routed 'in real time' .... fail[s] to provide specific factual allegations"); *Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("[u]sing the word 'intercept' repeatedly is simply not enough" to "make it plausible Google is intercepting [plaintiff's] data in transit").

CIPA, and courts have dismissed similar claims based on far more detailed allegations of intent. *Cf. Heiting v. Taro Pharm s. USA, Inc.*, 2023 WL 9319049, at *6 (C.D. Cal. Dec. 26, 2023) (holding allegations that "Defendant paid Genesys to intercept messages . . . [did not] demonstrate[] Defendant acted with the requisite knowledge or intent to aid and abet Genesys's purported CIPA violation"). Even if such allegations were sufficient, Plaintiff cannot plausibly allege intent on the face of LinkedIn's policies disclosing the ***opposite*** intention—that LinkedIn does not want to receive sensitive information and expressly prohibits websites from transmitting such data to LinkedIn through its Advertising Agreement and Ads Policies. (Reddy Decl. Ex. B, LinkedIn Ads Agreement) ("You will also not transfer to LinkedIn any data that . . . constitutes Sensitive Data, including by way of installing the Insight Tag on a page that collects medical, financial, or other Sensitive Data about identified or identifiable individuals."); (*id.* Ex. C, LinkedIn Advertising Policies) ("Ads must not target based on sensitive data or categories . . . including medical information and consumer health data.").

*Doe* is instructive. There, Judge Chhabria found "plaintiffs have not adequately alleged that Google intentionally obtained patients' private health information" via Google Analytics, *inter alia*, because "Google repeatedly told developers not to send personally identifiable information" and thus "purposefully acted so as ***not*** to receive any personal health information." *Doe*, 2024 WL 3490744, at *4. The same reasoning applies here, and Plaintiff's claim fails for this same reason.

### 4.    Plaintiff's Claims Under CIPA's Third Clause Have Further Flaws.

To begin, a claim brought under CIPA's third clause for use of unlawfully obtained data must be predicated on a violation of one of the first two clauses and thus fails because Plaintiff does not assert a viable claim under either of those clauses. *In re Google Assistant Privacy Lit.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) ("Plaintiffs must establish that the information at issue . . . was obtained through a violation of the first or second clauses. Because Plaintiffs have not done so, they have failed to plead a violation of third clause."); *Mastel,* 549 F. Supp. 3d at 1137 (no derivative liability under third clause without predicate).

Additionally, as discussed above, Plaintiff pleads no facts that render plausible her unsupported allegation that LinkedIn independently used any of the allegedly intercepted

1    information.  Her conclusory allegation that LinkedIn "is able to target its account holders for

2    advertising" alleges what is possible, but not what occurred here. (Compl. ¶ 27.)  And her claim

3    that "personal information and communications obtained by LinkedIn are used to fuel various

4    services offered via LinkedIn's Marketing Solutions" is inadequate to plead LinkedIn used any of

5    her data.   They are not tethered to ReflexMD or Plaintiff, let alone any specific alleged

6    communications.  *(Id.* ¶ 17.)  In this way, this is an even more attenuated series of allegations than

7    those rejected in *James*: that "record[ing] the data and stor[ing] it . . . is insufficient to support a

8    plausible interference [*sic*] [the analytics provider] attempted to read or learn [its] contents." *James*,

9    2023 WL 8879246, at *3.  Plaintiff's claim fails for this reason as well.

10    **B.    Plaintiff Fails to State a Claim Under CIPA § 632**

11    To state a claim under § 632, Plaintiff must show, *inter alia*, that LinkedIn intentionally

12    recorded a "confidential" communication by means of an "amplifying or recording device."  *See*

13    Cal. Penal Code § 632.  Plaintiff has not satisfied these elements.  She fails to adequately allege

14    that LinkedIn "intentionally" recorded a "confidential" communication, and that the Insight Tag—

15    a piece of JavaScript software code—qualifies as an "amplifying or recording device."

16    ***Intentionally Record***:  Like her Section 631 claim, Plaintiff's Section 632 claim is

17    insufficient because her Complaint fails to plausibly allege that LinkedIn acted with "intent." (*See*

18    *generally* Compl. ¶¶ 71-81.)  Further, her only allegations regarding LinkedIn's state of mind

19    merely parrot Section 631's elements.  (*Id.* at ¶¶ 65-66.)  These bare allegations do not satisfy

20    Plaintiff's pleading burden, which requires that she allege "specific factual circumstances that make

21    plausible [LinkedIn's] intent to record a confidential communication." *Vartanian v. VW Credit,*

22    *Inc.*, 2012 WL 12326334, at *2 (C.D. Cal. Feb. 22, 2012) (finding allegation that Defendant "had

23    a policy or practice of recording telephone conversations" too conclusory to plead intent).  Indeed,

24    California courts have long held that Section 632(a)'s intent requirement is satisfied only if "the

25    person using the recording equipment [did] so with the ***purpose*** *or* ***desire*** of recording a confidential

26    conversation, or with the ***knowledge to a substantial certainty*** that his use of the equipment will

27    result in the recordation of a confidential conversation." *People v. Superior Court (Smith)*, 70 Cal.

28    2d 123, 134 (1969) (emphases added).  It is not enough to intend to use a recording device; instead,

1    a defendant must **intend to use it for an impermissible purpose**.  This rule "provides effective

2    protection against 'eavesdroppers' without penalizing the innocent use of recording equipment."

3    *Id.*  Plaintiff's bare pleading, coupled with LinkedIn's policies specifically prohibiting advertising

4    customers from sending sensitive information via the Insight Tag, belie any plausible inference that

5    LinkedIn **intended** for advertising customers to use the Insight Tag for an impermissible purpose.

6        **Device:** Plaintiff's Section 632 claim also fails because she does not plead that the Insight

7    Tag is an "amplifying or recording **device**."  § 632(a).  Plaintiff alleges that the Insight Tag "is a

8    JavaScript-based code which allows for the installation of its software." (Compl. ¶ 22.)  Numerous

9    courts interpreting CIPA recognize that software is not a "device," and have dismissed CIPA claims

10    challenging software.  *A.S. v. SelectQuote Ins. Servs.*, 2024 WL 3881850, at *11 (S.D. Cal. Aug.

11    19, 2024) (dismissing § 632 claim based on recording by software); *Doe v. Microsoft Corp.*, 2023

12    WL 8780879, at *8 (W.D. Wash. Dec. 19, 2023) (holding same) ("Because software does not

13    constitute a 'device' under the CIPA, Plaintiff's § 632 claim against Microsoft is deficient.");

14    *Moreno v. San Francisco Bay Area Rapid Transit Dist.,* 2017 WL 6387764, at *5 (N.D. Cal. Dec.

15    14, 2017) (holding "device" does not apply to software under CIPA § 637.7); *In re Google Location*

16    *Hist. Litig.*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019) (holding same).  This approach is well-

17    reasoned and consistent both with rules of statutory construction and CIPA's legislative history.

18        In interpreting California law, courts look to the "actual words of the statute" and "giv[e]

19    them a plain and commonsense meaning."  *In re Google Location Hist. Litig.*, 428 F. Supp. 3dat

20    193 (quoting *Cal. Teachers Ass'n v. Governing Bd. of Rialto Unified Sch. Dist.*, 14 Cal.4th 627

21    (1997)).  *Moreno* is instructive.  There, the Court interpreted a different provision of CIPA and

22    observed that a device is generally understood as a "thing," "a piece of mechanical or electronic

23    equipment" or "a piece of equipment or a mechanism designed to serve a special purpose or perform

24    a special function."  2017 WL 6387764, at *5.  It then concluded that because the term "device"

25    refers to a physical object, it did not apply to the software at issue.  *Id.*; *see also In re Google*

26    *Location Hist. Litig.*, 428 F. Supp. 3d 193 (holding same).

27        Legislative history is consistent with this interpretation.  The legislature chose to limit § 632

28    to electronic "devices," and although the statute was modified in 2017 by AB 1671, those revisions

1    did nothing to modify the statute to address software.

2        LinkedIn acknowledges that a handful of courts in this district have denied this argument at

3    the pleadings stage and allowed plaintiffs to allege that software is a "device" for purposes of § 632.

4    In *Doe v. Meta Platforms* and *Yockey*, the Court found that software was a device for purposes of

5    § 632 based on cases interpreting the term in the federal Wiretap Act. *Doe v. Meta Platforms, Inc.*

6    690 F. Supp. 3d 1064, 1080 (N.D. Cal. 2023), motion to certify appeal denied, 2024 WL 4375776

7    (N.D. Cal. Oct. 2, 2024); *Yockey*, 2024 WL 3875785, at *7. But neither of those courts considered

8    legislative history or the plain language of the statute, and the federal Wiretap Act cases on which

9    those courts relied invoked the definition of "device" in the Wiretap Act, which has no application

10   here. *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1084 (N.D. Cal. 2015). Accordingly, the Court

11   should not be persuaded by the reasoning in *Doe* and *Yockey*.

12       ***Confidential***: Lastly, Plaintiff does not plausibly allege that her online communications

13   with ReflexMD were "confidential" within the meaning of the statute. "A communication is

14   confidential under Section 632 if a party 'has an objectively reasonable expectation that the

15   conversation is not being overheard or recorded.'" *Swarts*, 689 F. Supp. 3d at 746. Because online

16   "communications can easily be shared by, for instance, the recipient(s) of the communications,"

17   "California appeals courts have generally found that Internet-based communications are not

18   'confidential' within the meaning of [S]ection 632." *Id.* at 746-47 (quoting *Campbell v. Facebook*

19   *Inc.*, 77 F. Supp. 3d 836, 849 (2014)) (collecting cases). Indeed, there is a "presumption' that such

20   communications do not give rise to the requisite expectation." *Id.* at 747 (quoting *Revitch v. New*

21   *Moosejaw, Inc.*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019)). That presumption should

22   apply here, and Plaintiff's claim should be dismissed for this reason as well.

23       **C.    Plaintiff's Section 631 and 632 Claims Also Fail Because She Has Not Alleged**
24           **Interception of "Content."**

25       To state a valid claim, Sections 631 and 632 of CIPA both require that Plaintiff plausibly

26   allege that LinkedIn unlawfully intercepted "communications." §§ 631(a), 632. Here, Plaintiff

27   merely alleges that LinkedIn receives "information about which page on the ReflexMD Website

28   [she] was viewing as well as the sections [she] was making[.]" (Compl. ¶ 43.) But routine

browsing information is not a "communication" under state wiretapping law.  The Massachusetts Supreme Court recently confronted this exact issue in a similar challenge to the use of MetaPixel and Google Analytics on hospital websites.[5]  *Vita v. New England Baptist Hospital*, 2024 WL 4558621, at *3.  (Mass. October 24, 2024)  In construing the Massachusetts' law's statutory text, the Court first observed that the statute did not specifically define "communication."  *Id.* at *4.  It further observed that "it does seem clear that the plain meaning of 'communication' includes messages and conversations between people" and held that Plaintiffs' complaints "do not allege communications between people in this commonsense way."  *Id.* at *8.  After surveying legislative history and case law, the Court determined "the rule of lenity must apply, thereby entitling the defendants to 'the benefit of any rational doubt' in the construction of the statute.'"  *Id.* at *7 (citation omitted).  It then dismissed the underlying wiretap claims.  *Id.* at *2.

The same logic applies here.  Like the Massachusetts Wiretap law, CIPA does not define "communication."  Further, Plaintiff does not plausibly allege that the browsing information identified in her pleading is akin to a communication in accordance with that term's plain meaning.  *Campbell v. Allied Van Lines Inc.,* 410 F.3d 618, 620–21 (9th Cir. 2005) ("Under the 'plain meaning' rule, [w]here the language [of a statute] is plain and admits of no more than one meaning the duty of interpretation does not arise[.]") (internal quotations omitted).  Accordingly, the Court should dismiss each of her CIPA claims for this independent reason.

### D.    Plaintiff Fails to State a Claim for Invasion of Privacy Under the California Constitution.

The California Constitution, Art. I, Sec. 1 "set[s] a high bar for an invasion of privacy claim."  *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (Koh, J.).  To state a claim for invasion of privacy, a plaintiff must allege (1) a legally protected privacy interest, (2) a reasonable expectation of privacy under the circumstances, and (3) highly offensive conduct by the defendant that amounts to a serious invasion of the protected privacy interest.   *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35–37 (1994).  Since these elements overlap with the elements of a common law claim for intrusion upon seclusion, case law analyzing these causes of

---

[5] Massachusetts Wiretap law—like CIPA—is a two-party consent statute.

1    action is often considered interchangeably.  *See, e.g., Hammerling v. Google LLC*, 2022 WL

2    17365255, at *8 (N.D. Cal. Dec. 1, 2022) (analyzing the tests together).

3        Where, as here, the invasion of privacy claim shares a factual basis with a defective

4    wiretapping claim (*see, e.g.*, Compl. ¶¶ 82-88), it should likewise be dismissed.  *Graham*, 533 F.

5    Supp. 3d at 836.  As set forth below, even if the Court considered the Plaintiff's constitutional claim

6    on its own merit, Plaintiff's allegations fall short of clearing the California Constitution's "high

7    bar" for stating a claim.  This Court should dismiss this claim with prejudice.

8                    **1.    Plaintiff Fails to Allege Any Protected Privacy Interest.**

9        "Just as the right to privacy is not absolute, privacy interests do not encompass all

10   conceivable assertions of individual rights."  *Hill*, 7 Cal. 4th at 35.  Legally recognized privacy

11   interests are generally categorized into "two classes: (1) interests in precluding the dissemination

12   or misuse of sensitive and confidential information ('informational privacy'); and (2) interests in

13   making intimate personal decisions or conducting personal activities without … intrusion …

14   ('autonomy privacy')."  *Id.*  (emphasis added).  Plaintiff alleges neither.

15                    **a.    Plaintiff's   Generalized   Allegations   That   Consumers'
                              Information Is Shared with LinkedIn Do Not State a Claim.**

16

17       Plaintiff's claims are premised on sweeping allegations untethered to any assertion that ***her***

18   ***own*** information was ***in fact*** shared with LinkedIn.  But "[a] privacy interest needs to be pled with

19   particularity" and "[i]t is not enough to say that a defendant had the ability to invade someone's

20   privacy; a plaintiff needs to demonstrate that a defendant invaded ***their*** interests[.]"  *Westron v.*

21   *Zoom Video Comm'ns*, 2023 WL 3149262, at *2 (N.D. Cal. Feb. 15, 2023) (emphasis added).

22   Where a plaintiff "does not allege that she shared any information" and instead "makes vague

23   allegations that [her communications] ***could*** include private information and that users often share

24   sensitive information," this is insufficient to allege a legally protected privacy interest.  *Jones v.*

25   *Peloton Interactive, Inc.*, 2024 WL 1123237, at *7 (S.D. Cal. Mar. 12, 2024).

26       Plaintiff's allegations pertaining to herself are vague and generic.  She asserts, in the

27   introductory portion of the Complaint that when she "purchased Semaglutide from

28   [ReflexMD] . . . LinkedIn was tracking her private activity on ReflexMD's Website" and LinkedIn

1   received communications containing some unspecified "prescription information." (Compl. ¶ 6;

2   *see also id.* ¶¶ 62, 68, 74). Later, she alleges only that "Defendant intercepted her personally

3   identifiable information and protected health information," with no specification—she offers zero

4   particularized allegations about what specific information LinkedIn received about *her*. (Compl.

5   ¶ 47.) For example, her allegations about the information LinkedIn *could* receive from entered

6   survey results pertain only to unspecified "consumers." (Compl. ¶¶ 37-39, 44 (alleging, *e.g.*, that

7   "LinkedIn intercepts . . .*consumers'* confidential communications . . . when they are completing

8   their medical survey on the Website.")) Plaintiff never even alleges that she took the featured

9   survey. Thus, her mere allegations about what information LinkedIn received from "consumers"

10   are insufficient. (Compl. ¶ 38 (emphasis added)); *see id.* ¶¶ 36-45 (characterizing challenged

11   processes by reference to "consumers'" actions).)

12             **b.**      **Plaintiff Fails to Allege an Informational Privacy Interest.**

13        Even setting aside Plaintiff's failure to put forward particularized allegations establishing

14   that she herself had an informational privacy interest LinkedIn could have impinged upon, Plaintiff

15   also fails to allege, as she must, (1) that sensitive and confidential information was at issue and (2)

16   that LinkedIn disseminated or misused that information. *Hill*, 7 Cal. 4th at 35.

17        Most personally identifying information is not subject to constitutional protection. *See*

18   *Cabral v. Supple, LLC*, No. EDCV 12-85, 2012 WL 12895825, *3 (C.D. Cal. Oct. 3, 2012).

19   Instead, to be protected, the challenged information must be "private," such that "well-established

20   social norms recognize the need to maximize individual control over its dissemination and use to

21   prevent unjustified embarrassment or indignity." *Hill*, 7 Cal. 4th at 35. Plaintiff attempts to

22   shoehorn the information at issue into the category of "sensitive, confidential communications and

23   protected health information." (Compl. ¶ 83.) "Medical patients' privacy interests . . . include

24   descriptions of symptoms, family history, diagnoses, test results, and other intimate details

25   concerning treatment," but Plaintiff alleges none of these, nor any interests in information

26   equivalently private. *St. Aubin*, 2024 WL 4369675, at *12. As explained above with respect to

27   Plaintiff's Section 632 claim, a close read of Plaintiff's specific allegations reveals that the

28   challenged information is neither particularly sensitive nor private, and is generic, limited to a

consumer's interest in "see[ing] if [they] qualify" to attempt "[w]eight loss with GLP-1 Medication," gender, selections from a set of vague pre-defined "weight loss goals," and the fact of a payment on ReflexMD's website (*see* Compl. ¶¶ 40, 43). Indeed, Plaintiff's specific allegations establish that LinkedIn does not even receive information showing that a consumer actually purchased Semaglutide, but only that they made some payment on ReflexMD's website. Such vague and generic information is a far cry from the extremely sensitive medical information California courts have found sufficient to ground an informational privacy interest under the California Constitution. *See, e.g.*, *Pettus v. Cole*, 49 Cal. App. 4th 402, 441 (1996) (finding reports disclosing a patient's **private anxieties** about his rash medication **together with** his sleep patterns, sex drive, hostile feelings toward coworkers, suicidal ideation, smoking and drinking habits, comprehensive social history, and highly emotional behaviors as reported by physicians to be "the type of 'sensitive personal information' the California voters had in mind") (emphasis added).

### c.    Plaintiff Fails to Allege an Autonomy Privacy Interest.

California courts have recognized an autonomy privacy interest only "in cases alleging *bodily* autonomy," that is, in cases implicating invasions into physical, bodily choices. Plaintiff's failure to plead any facts suggesting bodily autonomy is at issue forecloses this path. *In re Google Location History Litig.*, 428 F. Supp. 3d at 198 (emphasis in original) (collecting cases). Fact patterns raising the issue of autonomy privacy involve physical, real-world invasions of privacy, such as constraints on women's decisions about bearing children or mandatory drug testing through forced urine samples. *Comm. to Def. Reprod. Rights v. Myers*, 625 P.2d 779, 792 (Cal. 1981) (noting constitutional right of privacy in women's "personal bodily autonomy"); *Smith v. Fresno Irrigation Dist.*, 84 Cal. Rptr. 2d 775, 785 (1999) (discussing autonomy privacy in the context of drug testing through use of a urine sample). Courts have not found "cause to extend the bodily autonomy line of cases to data autonomy." *In re Google Location Hist. Litig.*, 428 F. Supp. 3d at 198; *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1016, 1039 (N.D. Cal. 2014) (noting California Courts' limitation autonomy privacy to "cases alleging *bodily* autonomy"). While Plaintiff makes vague assertions that she has "an interest in . . . making personal decisions and/or conducting personal activities without observation," (Compl. ¶ 83), she in fact alleges no physical intrusion

compromising her bodily autonomy and therefore alleges no autonomy privacy interest.

### 2. Plaintiff Fails to Allege a Reasonable Expectation of Privacy in Her Online Commercial Activity.

Plaintiff's constitutional claim fails for the additional reason that her expectation of privacy was not reasonable under the circumstances. In general, a "reasonable expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms." *Hill*, 7 Cal. 4th at 37. In cases challenging the data collection practices of corporate actors, courts consider factors including "the amount of data collected, the sensitivity of data collected, the manner of data collection, and the defendant's representations to its customers." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022). As discussed above, here, the amount of data allegedly collected was minimal, confined to particular interactions on a particular portion of a single website, and Plaintiff inadequately alleges that such data were sensitive. *Supra* Sec. II.C.1.b; *see, e.g.*, *D'Angelo v. FCA US, LLC*, 2024 WL 1625771, at *17 (S.D. Cal. Mar. 28, 2024) ("[C]ourts are more reluctant to find a reasonable expectation of privacy when the data collected is not sensitive.")

Plaintiff fails to allege a reasonable expectation of privacy because nothing in her pleading demonstrates that expectation was ***reasonable*** under the circumstances. Plaintiff concedes that she voluntarily visited ReflexMD's website and transmitted unspecified information to Reflex MD, and nowhere plausibly alleges that such transmissions should remain private from ***ReflexMD or its agents***. Virtually all consumer-facing websites track the conduct of web visitors. *See, e.g.*, *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *3 (S.D. Cal. May 8, 2024) (noting that the proliferation of litigation in this area "suggest[s] Defendant is not alone in this practice," and finding that this is "a factor to consider"). Generally speaking, "consumers do not have a reasonable expectation of privacy over their activity" on public commercial websites, because we "understand that what we do on the Internet is not completely private." *Id.* at *2 (internal quotations omitted); *see D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *10-*11 (S.D. Cal. Oct. 24, 2023) (stating "accepted community norms around conversations [on] . . . a commercial website for selling merchandise) point away from a reasonable expectation of privacy"); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 524-25 (C.D. Cal. 2021) (no reasonable expectation of privacy on Nike

website); *Saeedy v. Microsoft Corp.*, 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023) (stating that, *inter alia*, "URLs of web pages visited, product preferences, interactions on a website, search words typed into a search bar, user/device identifiers, anonymized data, product selections to a shopping cart, and website browsing activities" are not the types of information in which plaintiffs could have "a reasonable expectation of privacy").  Given that the challenged practices are nearly universal on consumer-facing websites, no user can reasonably expect that the web pages she visits, or the information she provides on such a website, are completely private.

Finally, Courts are similarly skeptical where "Plaintiffs do not allege that Defendant set out an expectation that it would not collect" the challenged data.  *D'Angelo*, 2023 WL 7006793, at *17. Here, Plaintiff herself alleges that LinkedIn's Privacy Policy clearly discloses that it "use[s] cookies and similar technologies (e.g., pixels and ad tags) to collect data (e.g., device IDs) to recognize you and your device(s) on, off and across different services and devices where you have engaged with our Services,'" and "'allow[s] some others to use cookies as described in our Cookie Policy.'" Compl ¶ 31 (quoting Privacy Policy, Linkedin, https://www.linkedin.com/legal/privacy-policy (Sept 18, 2024)).  LinkedIn also explicitly tells users "[w]e receive information about your visits and interaction with services provided by others when you visit others' services that include some of our ads, cookies or similar technologies." (Reddy Decl. Ex. D, LinkedIn Privacy Policy at § 1.8.) All the challenged data here falls under these two disclosures.  Thus, because LinkedIn disclosed precisely the data practices Plaintiff challenges, she fails to allege any reasonable expectation of privacy.  *Hill*, 7 Cal. 4th at 26; *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1037–38.[6]

### 3.    The Routine Commercial Behavior Alleged Is Not Highly Offensive as a Matter of Law.

"Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the

---

[6] While Plaintiff alleges that she did not consent to purported interception, (Compl. ¶ 46), "allegations that a plaintiff did not consent to data collection practices, without more, does not support a reasonable expectation of privacy."  *D'Angelo v. FCA US, LLC*, 2024 WL 1625771, at *17 (S.D. Cal. Mar. 28, 2024)

privacy right." *Hill*, 7 Cal. 4th at 37. To count as "highly offensive," an intrusion must constitute an "egregious breach of the social norms underlying the privacy right." *In re iPhone Application Litig.,* 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (quoting *Hill*, 7 Cal. 4th at 26, 37). This high standard requires more than mere "disclosure of personal information," *Low*, 900 F. Supp. 2d at 1025, and indeed, more than mere "private medical information." *Ojeda v. Kaiser Permanente Int'l, Inc.*, 2022 WL 18228249, at *6 (C.D. Cal. Nov. 29, 2022) (disclosure of Covid vaccination status, though politically fraught, was not highly offensive on facts alleged). Instead, courts analyzing whether a plaintiff alleges a highly offensive intrusion undertake a holistic consideration of "factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, [and] the intruder's motives and objectives[.]" *See, e.g.*, *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1126 (S.D. Cal. 2023); *Hammerling*, 2022 WL 17365255, at *8. And each of these factors weighs in favor of dismissal with prejudice.

**First**, Plaintiff fails to plead any risk of "serious harm," much less with the requisite specificity as to, for example, "the form and extent of the distress and alienation suffered," such as being "singled out" for coworkers' approbation. *Ojeda*, 2022 WL 18228249, at *7. Because Plaintiff merely offers vague claims of unspecified "economic injury" and "breach of Plaintiff's privacy" (Compl. ¶¶ 6, 53), on the facts alleged—limited disclosure of information to a single party—this Court should conclude that she ***cannot*** satisfy the pleading standard.

**Second**, though Plaintiff attempts to contort her facts to manufacture the appearance of a medical setting (*see, e.g.*, Compl. ¶ 7), her transactions more closely align with fact patterns in cases involving purchases of health-related products—where courts have found no highly offensive intrusion—rather than those involving paradigmatically private medical communications with physicians. *Compare, e.g.*, *Hammerling*, 2022 WL 17365255, at *9 (collection of information revealing that the plaintiff shopped for, *inter alia*, a foot massager and women's slippers, deals for discounted anti-inflammatory meal subscriptions, and coconut oil not highly offensive) *with, e.g.*, *In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 653 (N.D. Cal. 2024) (allegations that Meta intercepted "the health conditions for which [plaintiffs] sought treatment or services, as well as examples of their queries, appointment requests, or other information and services about which

they communicated with their providers" sufficient to state a claim for invasion of privacy). (emphasis added).    In *R.C. v. Walgreen Co.*, the court distinguished "sensitive healthcare products . . . related to specific health conditions (yeast infection and diabetes)" from "health-related items less indicative of a medical condition," like "daily vitamins, thermometers, or toothpaste." 2024 WL 2263395, at *9 (C.D. Cal. May 9, 2024).  Here, Plaintiff's allegations make clear that Semaglutide is not a medication that treats a specific infection or illness.  Instead, Plaintiff alleges that it is a product used to help purchasers accomplish "goals" ranging from weight loss and general health improvement to things like "[l]ooking better," "[i]mprov[ing] confidence," or "[i]ncreas[ing] energy." (Compl. ¶ 40.)  The information LinkedIn allegedly received is, thus, no more sensitive than the daily vitamin purchases found not highly offensive in *Walgreen* and is clearly less sensitive than the Covid vaccination status found permissible in *Ojeda*.  Indeed, because Plaintiff never alleges that she went through the alleged survey, much less what answers she gave, the Court cannot even attempt to evaluate if the disclosures about her were "highly offensive."

  ***Third***, Plaintiff takes her generic allegations that "LinkedIn utilized Plaintiff's . . . information for its own purposes, including for targeted advertising" (Compl. ¶ 79), to evidence some incriminating motive.  But the *Hammerling* Court rejected this.  Noting that "[t]he provision of new, improved, and more personalized services is . . . largely indistinguishable from, [defendant] Google's 'commercial purposes,'" the Court was "unpersuaded that Plaintiffs' alleged motive for Google's data collection—that 'Google was using the data for its own purposes'—alter[ed] this conclusion." *Hammerling*, 2022 WL 17365255, at *9 n.13.  Further, Plaintiff does not plead any facts suggesting LinkedIn's alleged receipt of her information was "intentional, punitive, [or] reckless" rather than "inadvertent." *Ojeda*, 2022 WL 17227249, at *7.  And courts have held that allegations of "accidental" conduct "of the kind that is inevitable when human beings process large amounts of information" are "not necessarily sufficient to sustain a claim under article I, § 1" of the California Constitution. *Doe v. Beard*, 63 F. Supp. 3d 1159, 1169 (C.D. Cal. 2014).

  Instead of suggesting any culpable motive, this limited collection of purchase-related information in the commercial setting alleged falls within the boundaries of "routine commercial behavior," which courts consistently find is not highly offensive. *Fogelstrom v. Lamps Plus, Inc.*,

195 Cal. App. 4th 986, 992 (2011). LinkedIn's Insight Tag is an example of a ubiquitous commercial technology, and this Court should easily find that use of such technology is routine commercial behavior rather than any highly offensive practice. *Fogelstrom* is highly instructive on this point: There, as here, the challenged practice included alleged nonconsensual obtainment of the plaintiff's personal information, which was used to serve advertisements to him. *Id.* The court in that case found that "the conduct of which plaintiff complains does not constitute a 'serious' invasion of privacy." *Id.* Similarly, in *Yunker v. Pandora Media, Inc.*, the court found allegations that defendant "Pandora obtained the plaintiff's PII and provided that information to advertising libraries for marketing purposes" to be "similar to the allegations in . . . *Fogelstrom*." 2013 WL 1282980, at *15 (N.D. Cal. Mar. 26, 2013) (finding plaintiff's allegations insufficient to show highly offensive conduct). This Court should reach the same conclusion.

Courts find allegations of a highly offensive intrusion sufficient only where there are far more extreme, pervasive intrusions than limited collection of generic consumer selections on certain pages of a single website. *See, e.g.*, *Goodman v. HTC America, Inc.*, 2012 WL 2412070, *15 (W.D. Wash. June 26, 2012) (finding allegations "that Defendants engaged in the continuous tracking of their location and movements" plausibly highly offensive because "GPS monitoring generates a precise, comprehensive record . . . that reflects a wealth of detail about . . . familial, political, professional, religious, and sexual associations"); *In re Google Location History Litig.* 514 F. Supp. 3d 1147, 1158 (N.D. Cal. 2021) (same where plaintiffs did not "allege that Google only collected information at discrete, intuitive times, but rather, they specifically allege that Google collected location information constantly"). Such facts are worlds away from this case.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's CIPA and California constitutional invasion of privacy claims should be dismissed with prejudice.

Dated: October 25, 2024                COOLEY LLP
                                       By: */s Jeffrey M. Gutkin*
                                       Jeffrey M. Gutkin
                                       Attorney for Defendant
                                       LINKEDIN CORPORATION