COOLEY LLP
JEFFREY M. GUTKIN (216083)
(jgutkin@cooley.com)
AARTI REDDY (274889)
(areddy@cooley.com)
AMY M. SMITH (287813)
(amsmith@cooley.com)
MORGAN E. LEWIS (322205)
(melewis@cooley.com)
JULIA M. IRWIN (352861)
(jirwin@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

COOLEY LLP
JORGE L. SARMIENTO (*Pro Hac Vice* Pending)
(jsarmiento@cooley.com)
55 Hudson Yards, Fl. 43
New York, NY 10001-2157
Telephone: +1 212 479 6000
Facsimile: +1 212 479 6275

Attorneys for Defendant
LINKEDIN CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

L.B., individually and on behalf of all others similarly situated,

Plaintiff,

v.

LINKEDIN CORPORATION,

Defendant.

Case No. 5:24-cv-06832-EJD

**LINKEDIN CORPORATION'S REQUEST FOR JUDICIAL NOTICE**

## I. DOCUMENTS SUBJECT TO THIS REQUEST

Pursuant to Rule 201 of the Federal Rules of Evidence and related authority, Defendant LinkedIn Corporation ("LinkedIn") hereby respectfully requests that the Court deem the following documents (attached as Exhibits A, B, C, and D to the Declaration of Aarti Reddy ("Reddy Decl.")) incorporated by reference into Plaintiff's Class Action Complaint (ECF No. 1, "Complaint" or "Compl."), and/or take judicial notice of these documents in conjunction with LinkedIn's concurrently filed Motion to Dismiss the Class Action Complaint:

- Exhibit A: A webpage from LinkedIn's website titled "Insight Tag"; cited, quoted, and relied upon in the Complaint; and publicly available at https://business.linkedin.com/marketing-solutions/insight-tag.
- Exhibit B: The operative version of the LinkedIn Ads Agreement that was last updated on August 8, 2024. This document is publicly available at https://www.linkedin.com/legal/sas-terms.
- Exhibit C: The operative version of LinkedIn's Advertising Policies that was last updated on May 13, 2024. This document is publicly available at https://www.linkedin.com/legal/ads-policy.
- Exhibit D: The operative version of the LinkedIn Privacy Policy that was last updated on September 18, 2024; cited, quoted, and relied upon in the Complaint; and publicly available at https://www.linkedin.com/legal/privacy-policy.

## II. INTRODUCTION

Plaintiff L.B. claims that LinkedIn used its web pixel (the "Insight Tag") to "track her private activity on ReflexMD's Website" while she purchased Semaglutide from ReflexMD. (Compl. ¶ 6.) LinkedIn hereby asks the Court to consider publicly available documents that are central to Plaintiff's claims and repeatedly cited in Plaintiff's Complaint, including a portion of LinkedIn's website describing the Insight Tag technology and LinkedIn's Privacy Policy. Likewise, LinkedIn also seeks judicial notice of its Ads Agreement, Advertising Policies, and Privacy Policy. Each of these agreements is publicly available, from a source whose authenticity could not reasonably be questioned. Further, none are offered for the truth of the matter asserted

therein. LinkedIn offers its Ads Agreement and Advertising Policies to show its state of mind, and its Privacy Policy to show Plaintiff had notice of the alleged conduct she challenges. Accordingly, and as set forth below, each of these documents is either incorporated by reference or is the proper subject of judicial notice, and the Court should consider them for the reasons set forth below.

## III. LEGAL STANDARD

"[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

At the Rule 12(b)(6) stage, a district court may incorporate by reference and thus consider any "documents whose contents are alleged in a complaint and whose authenticity no party questions," regardless of whether the plaintiff attached the document to its pleading. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (quoting *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005)). The Ninth Circuit has held that "[a] court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (internal quotations omitted). In these circumstances, a defendant may offer a document incorporated by reference and the district court may treat it as part of the complaint, and thus "may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.* (internal citation omitted).

Furthermore, a court ruling on a motion to dismiss may grant judicial notice of facts generally known within the jurisdiction of the trial court or which "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned," such that they are "not subject to reasonable dispute." Fed. R. Evid. 201(b)(2); *see also Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 999 (9th Cir. 2010) (same). Where the party seeking judicial notice provides the court with a copy of the relevant webpage, "websites and their contents may be proper subjects for judicial notice" as a "general matter[.]" *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 145-46 (N.D. Cal. 2020) (citation omitted). Accordingly, courts in this district have

routinely taken judicial notice of webpages on the websites of private entities. *See, e.g.*, *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1061 (N.D. Cal. 2021) (taking notice of defendant Google's webpages because they "appear[ed] on publicly available websites and [were] thus proper subjects for judicial notice").

## IV. ARGUMENT

### a. The Complaint Incorporates Exhibits A and D by Reference.

As set forth below, Exhibits A and D fit squarely within the bounds of the Ninth Circuit's binding incorporation by reference doctrine. *See, e.g.*, *Davis*, 691 F.3d at 1152; *Marder*, 450 F.3d at 448; *Knievel,* 393 F.3d at 1076.

***Exhibit A.*** Plaintiff could not dispute the authenticity of this document, which is a webpage on LinkedIn's website titled "Insight Tag" that is currently accessible. (Reddy Decl. ¶ 3.) Not only does Plaintiff cite this webpage in her Complaint no fewer than five times (Compl. ¶¶ 21-22 nn. 17, 19-22), she also quotes directly from it. (Compl. ¶ 22 ("LinkedIn 'recommend[s] using the JavaScript-based Insight Tag or Conversions API . . . .'") (citing LinkedIn.com, "Insight Tag," https://business.linkedin.com/marketing-solutions/insight-tag ("We 'recommend using the JavaScript-based Insight Tag or Conversions API . . .'")).) Plaintiff also relies on information from this same webpage to allege additional facts regarding the Insight Tag. (*Id.* (describing the mechanics of the Insight Tag with respect to first versus third party cookie tracking)); LinkedIn.com, "Insight Tag," https://business.linkedin.com/marketing-solutions/insight-tag (explaining that Insight Tag "Allows you to utilize both third party and first party cookie settings to track conversions"). As these aforementioned paragraphs illustrate, this webpage is one of the primary sources of information that Plaintiff uses to describe the challenged technology. Therefore, in addition to being unquestionably authentic and cited repeatedly in Plaintiff's Complaint, the "Insight Tag" webpage also provides facts central to Plaintiff's claims.

***Exhibit D***, the operative version of the LinkedIn Privacy Policy that was last updated on September 18, 2024, is likewise incorporated by reference into Plaintiff's Complaint. As with the "Insight Tag" webpage, Plaintiff cites the Privacy Policy itself no fewer than five times throughout her Complaint (Compl. ¶¶ 29 nn. 27, 30-33), and quotes it at length, (Compl. ¶¶ 30-32). Further,

the contents of the Privacy Policy underlie Plaintiff's allegation that she had a reasonable expectation of privacy in the challenged data, which is central to her claim that LinkedIn has engaged in conduct that constitutes an actionable invasion of privacy under the California Constitution. (Compl. ¶ 84.) This Exhibit therefore forms the basis of her constitutional claim. Finally, Plaintiff has no reasonable basis on which to challenge this document's authenticity, as it remains available on LinkedIn's website. (Reddy Decl. ¶ 5.) Accordingly, and consistent with Court rulings in other web analytics cases, the Court should consider this document incorporated by reference as well. *See R.C. v. Walgreen Co.*, 2024 WL 2263395, at *2 n.2 (C.D. Cal. May 9, 2024) (finding defendant's privacy policy incorporated by reference); *Hammerling v. Google LLC*, 2022 WL 17365255, at *3 (N.D. Cal. Dec. 1, 2022) (same); *Graham v. Noom, Inc*., 533 F. Supp. 3d 823, 834 (N.D. Cal. 2021) (same).

**b. Exhibits B, C, and D Are Each Judicially Noticeable.**

Exhibits B, C, and D are proper subjects of judicial notice because they are each publicly available and otherwise capable of "accurate[] and read[y] determination" by resort to "sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Specifically, these exhibits are publicly available webpages on LinkedIn's website (*see* Reddy Decl. ¶¶ 3–5), and it is well-established that "[w]ebsites and their contents may [] be proper subjects for judicial notice." *Garcia v. Best W. Norwalk Inn, LLC*, 2021 WL 4260406, at *2 (C.D. Cal. June 14, 2021). "Courts in this district have found that in general, websites and their contents may be judicially noticed." *Pac. Overlander, LLC v. Kauai Overlander*, 2018 WL 3821070, at *2 (N.D. Cal. Aug. 10, 2018); *see also Hayes v. Idaho Corr. Ctr.,* 849 F.3d 1204, 1210 n.7 (9th Cir. 2017) (taking judicial notice of a policy on a publicly accessible website); *Daniels-Hall*, 629 F.3d at 998-99 (taking judicial notice of a list of vendors on a publicly accessible website); *In re Toll Roads Litig*., 2018 WL 6131178, at *2 (C.D. Cal. Jan. 12, 2018) (noting that "[c]ourts may take judicial notice of publicly available policies" on websites). These documents are likewise indisputably authentic, as LinkedIn has not only provided direct hyperlinks but attached screen captures of each. *See Threshold Enters., Inc.*, 445 F. Supp. 3d at 145 (taking judicial notice of "screenshots and printouts of websites of the parties and other third parties not involved in this lawsuit"); *Garcia*, 2021 WL 4260406, at *2.

Finally, LinkedIn does not offer any of these documents for the truth of the matter asserted therein. *See Pac. Overlander, LLC*, 2018 WL 3821070, at *2 (taking judicial notice of defendant's website, printouts of its Instagram account, and printouts of its Google reviews in copyright and trademark infringement suit "not for the truth of the contents therein" but to inform Court's jurisdiction analysis). ***Exhibit B*** is LinkedIn's Ads Agreement, ***Exhibit C*** is LinkedIn's Advertising Policies, and ***Exhibit D*** is LinkedIn's Privacy Policy. (Reddy Decl. ¶¶ 3–5.) LinkedIn relies on Exhibits B and C for the sole purpose of showing its own state of mind—*i.e.*, that LinkedIn did not intentionally receive the challenged information but specifically advised advertisers not to transfer sensitive data to LinkedIn—and courts may take judicial notice of documents that evidence state of mind. (Motion to Dismiss at 13); *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1012 n. 11 (N.D. Cal. 2015) ("The Court takes judicial notice of the existence of these documents and . . . need not take judicial notice of the accuracy of the contents because the only purpose of the judicial notice is establishing Yamauchi's state of mind and knowledge."); *Westley v. Oclaro, Inc.*, 897 F. Supp. 2d 902, 929 (N.D. Cal. 2012), *on reconsideration in part* (Jan. 10, 2013) (taking judicial notice of the existence of stock sale documentation for purposes of assessing state of mind).

Further, because LinkedIn relies on Exhibit D solely to show that Plaintiff had notice of the alleged conduct she challenges, *id.* at 22, judicial notice is proper for Exhibit D as well. *See, e.g., Pirani v. Netflix, Inc.*, 2024 WL 69069, at *7 (N.D. Cal. Jan. 5, 2024) (taking judicial notice of documents showing what information the market had notice of in securities action); *Schrader Cellars, LLC v. Roach*, 2023 WL 3898932, at *7 (N.D. Cal. June 8, 2023) ("The Court properly took judicial notice of pleadings [in related litigation] to show . . . when Cellars was placed on notice of Roach's claims."); *Viramontes v. Pfizer, Inc.*, 2015 WL 9319497, at *9 (E.D. Cal. Dec. 23, 2015), *report and recommendation adopted*, 2016 WL 704715 (E.D. Cal. Feb. 23, 2016) (granting judicial notice of report to show when defendants were on notice of content in the report). Accordingly, the Court should take judicial notice of Exhibits B, C, and D.

## V. CONCLUSION

For these reasons, LinkedIn requests that the Court consider Exhibits A and D incorporated by reference into the Complaint and that the Court take judicial notice of Exhibits B, C, and D.

Dated: October 25, 2024

COOLEY LLP

By: */s/ Jeffrey M. Gutkin*
Jeffrey M. Gutkin

Attorney for Defendant
LINKEDIN CORPORATION

309745606