COOLEY LLP
JEFFREY M. GUTKIN (216083)
(jgutkin@cooley.com)
AARTI REDDY (274889)
(areddy@cooley.com)
AMY M. SMITH (287813)
(amsmith@cooley.com)
MORGAN LEWIS (322205)
(melewis@cooley.com)
JULIA M. IRWIN (352861)
(JIrwin@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

COOLEY LLP
JORGE L. SARMIENTO (Admitted *Pro Hac Vice*)
(jsarmiento@cooley.com)
55 Hudson Yards
New York, NY 10001-2157
Telephone: +1 212 479 6000
Facsimile: +1 212 479 6275

Attorneys for Defendant
LINKEDIN CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| L.B. individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LINKEDIN CORPORATION,<br><br>Defendant. | Case No. 5:24-cv-06832-EJD<br><br>**DEFENDANT LINKEDIN'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**<br><br>Date: January 16, 2025<br>Time: 9:00 a.m.<br>Dept: Courtroom 4, 5th Floor<br>Judge: Edward J. Davila<br>Trial Date: TBD<br>Date Action Filed: September 27, 2024 |

# TABLE OF CONTENTS

**Page**


I. Introduction ... 1

II. Argument ... 1

A. None of Plaintiff's Arguments Save Her CIPA Claims from Dismissal. ... 1

1. Plaintiff's Reply Confirms that LinkedIn Was a Vendor That Is Exempt from Liability under CIPA's Party Exception. ... 1

2. Plaintiff's Claim Under Section 631 Clause 1 Fails. ... 4

3. Plaintiff's CIPA Clause 2 Claim Fails for Myriad Independent Reasons. ... 5

4. Plaintiff's CIPA's Clause 3 Claim Is Also Doomed. ... 7

B. Plaintiff Does Not Plead a Viable Section 632 Claim. ... 8

C. Plaintiff Has Not Alleged Interception of Communications. ... 10

D. Plaintiff Fails to State a Claim for Constitutional Invasion of Privacy ... 10

1. The Complaint Does Not Implicate Specific "Medical Information." ... 10

2. Plaintiff's Inapposite Authorities Confirm that She Had No Reasonable Expectation of Privacy Here. ... 12

3. The Lack of Allegations Supporting a Highly Offensive Invasion Independently Merits Dismissal. ... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023) .... 4

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) .... 3

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) .... 11

*Doe v. Google LLC*,
2024 WL 3490744 (N.D. Cal. July 22, 2024) .... 3, 6

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .... 6, 7, 8

*In re Facebook Internet Tracking Litigation*,
956 F.3d 598 (9th Cir. 2020) .... 12, 13

*Gladstone v. Amazon Web Servs., Inc.*,
2024 WL 3276490 (W.D. Wash. July 2, 2024) .... 4

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .... 8

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) .... 9, 13

*In re Google Location Hist. Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) .... 13

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .... 9

*Heerde v. Learfield Commc'ns, LLC*,
2024 WL 3573874 (C.D. Cal. July 19, 2024) .... 4

*Holmes High Rustler, LLC v. Gomez*,
2015 WL 4999737 (N.D. Cal. Aug. 21, 2015) .... 3

*Ibarra v. City of Carson*,
214 Cal. App. 3d 90 (1989) .... 9

*Jackson v. LinkedIn Corp.*,
Case No. 5:24-cv-00812, ECF No.1 (N.D. Cal. Feb. 9, 2024) .... 4, 5, 6

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Jones v. Regents of Univ. of Cal.*,
2022 WL 1137089 (N.D. Cal. Apr. 18, 2022), *appeal dismissed*, 2023 WL 7480118 (9th Cir. June 6, 2023) ..... 7, 10

*Kauffman v. Papa John's Int'l, Inc.*,
2024 U.S. Dist. LEXIS 7873 (S.D. Cal. Jan. 12, 2024) ..... 1, 5

*Love v. Ladder Fin., Inc.*,
2024 WL 2104497 (N.D. Cal. May 8, 2024) ..... 5

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) ..... 14

*Matera v. Google*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ..... 4, 5

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ..... *passim*

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016) ..... 14, 15

*Oddo v. United Technologies Corp.*,
2022 WL 577663 (C.D. Cal. Jan. 3, 2022) ..... 14

*Ojeda v. Kaiser Permanente Int'l, Inc.*,
2022 WL 18228249 (C.D. Cal. Nov. 29, 2022) ..... 13

*People v. Superior Court*,
70 Cal. 2d 123 (1969) ..... 8

*Ramos v. The Gap Inc.*,
2024 WL 4351868 (N.D. Cal. Sept. 30, 2024) ..... 4, 5

*Robbins v. Mscripts, LLC*,
2023 WL 5723220 (N.D. Cal. Sept. 5, 2023) ..... 11, 12

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) ..... 2

*Rojas v. HSBC Card Servs. Inc.*,
20 Cal. App. 5th 427 (2018) ..... 8

*Shah v. Fandom, Inc.*,
2024 WL 4539577 at *4 (N.D. Cal. Oct. 21, 2024) ..... 4, 5, 9

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Smith v. Google, LLC*,
2024 WL 2808270, at *4 (N.D. Cal. June 3, 2024) .................... 4, 6

*Smith v. Google*,
No. 23-cv-3527-PCP, ECF No. 35 ¶ 29 (N.D. Cal. Oct. 9, 2023) .................... 4

*Turner v. Nuance Commc'ns, Inc.*,
2024 WL 2750017 (N.D. Cal. May 28, 2024) .................... 4

*Valenzuela v. Super Bright LEDs Inc.*,
2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) .................... 2, 3, 6, 7

*Vita v. New England Baptist Hospital*,
494 Mass. 824 (2024) .................... 9, 10

*In re Vizio, Inc. Consumer Privacy Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .................... 14, 15

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .................... 1

**Statutes**

42 U.S.C.
§ 1320(a) .................... 11
§ 1320(d) .................... 11
§ 1320d(3) .................... 11
§ 1395x .................... 11

## I. INTRODUCTION

LinkedIn's Motion to Dismiss ("Mot.") established that Plaintiff's Complaint cannot go forward for a host of reasons. Among other defects, Plaintiff fails to plead that LinkedIn acted as anything more than a service provider that stands in the shoes of ReflexMD and has not pled a "willful" interception of a communication "in transit" under Section 631 of CIPA. Likewise, Plaintiff's Section 632 claim fails because she does not adequately plead intent, that software is a device, and that her alleged internet communications with ReflexMD were confidential within the meaning of the statute. As to the Constitutional Invasion of Privacy claim, Plaintiff's Opposition only underscores she has not adequately alleged that she has a protected privacy interest or a reasonable expectation of privacy, or that LinkedIn's alleged intrusion could be "highly offensive."

Plaintiff's Opposition does not adequately address any of these flaws, and instead rests on mischaracterizations in law or clear misstatements of her allegations that ultimately confirm her Complaint deals solely in generalities. The Court should dismiss this action in its entirety.

## II. ARGUMENT

### A. None of Plaintiff's Arguments Save Her CIPA Claims from Dismissal.

#### 1. Plaintiff's Reply Confirms that LinkedIn Was a Vendor That Is Exempt from Liability under CIPA's Party Exception.

Plaintiff raises a hodgepodge of arguments to escape the party exception. None persuade.

***First***, Plaintiff argues that whether LinkedIn stands in the shoes of a party is "a question of fact" unsuitable for resolution on a motion to dismiss. Opp. at 4. To support her argument, Plaintiff relies on three decisions from outside this district that reached this conclusion, based on the specific facts pled in those cases, and the "technical context" of the different technologies at issue there. *Kauffman v. Papa John's Int'l, Inc.*, 2024 U.S. Dist. LEXIS 7873, at *19 (S.D. Cal. Jan. 12, 2024). In so arguing, Plaintiff asks the Court to ignore over a dozen cases, most from within this district, finding this issue dispositive on a motion to dismiss. Mot. at 6-9. As recognized in this district, the party exception becomes a question of fact only where the plaintiff has alleged sufficient facts showing that the recording software at issue ***"extend[ed] beyond the ordinary function of a tape recorder."*** *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *4 (N.D. Cal. Dec. 22,

2022); *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1121 (S.D. Cal. 2024) (considering Plaintiff's authorities and rejecting argument that party exception is a question of fact). The Court should decline Plaintiff's invitation to follow these outlier cases.[1]

***Second***, Plaintiff seeks to avoid dismissal by misstating her own allegations. As LinkedIn explained in its Motion, the Complaint makes clear that LinkedIn "***allows marketers*** . . . to target potential customers"; "***allow[s] advertisers*** to select specific characteristics to help them reach their ideal audience"; "***allow[s] potential advertisers*** to '[b]uild strategic campaigns'" and "***help[s] you*** optimize ***your campaigns***." Compl. ¶¶ 15, 18; 21 (emphases added). Plaintiff does not refute this, arguing instead that she pleads "Defendant uses the data it receives from the LinkedIn Insight Tag to group users into audience groups, which it then sells to advertisers by displaying their ads to the targeted groups it created through the intercepted data from the Website." Opp. at 5. Plaintiff pleads nothing of the sort. To the contrary, the only supportive allegation that the Opposition cites is not relevant. Opp. at 5 (citing Compl. ¶ 38 (stating that LinkedIn "intercepted consumers confidential prescription information").) Elsewhere in her Complaint, Plaintiff alleges that LinkedIn "marketing solutions" "allow advertisers to select specific characteristics to help them reach their ideal audience." Compl. ¶ 15. But even this allegation says nothing about Insight Tag data specifically, let alone how LinkedIn "used" Insight Tag data from ReflexMD's website. In any case, merely sorting data to "allow advertisers" to use it for their own purposes falls squarely within the scope of the vendor exception. Mot. at 6. (collecting cases); *Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *8 (C.D. Cal. Nov. 27, 2023) (allegations that software vendor could use data for "analytics and marketing/advertising to consumers" were "conclusory and insufficient").

Plaintiff next argues she alleges "LinkedIn used the information gleaned from the LinkedIn Insight Tag for its own marketing purposes," but this too is a fiction. The allegations to which she vaguely alludes only provide a general overview of Insight Tag functionality and describe the data transmitted via the Insight Tag (Opp. at 5 (citing Compl. ¶¶ 24-27)), or refer to LinkedIn's ability

---

[1] Plaintiff also confusingly claims she can avoid the vendor exception based on her allegation that she never "consented" to the alleged interception. Opp. at 5. This argument is irrelevant.

to "monetize" data in highly general terms that would apply to any vendor. *Id.*; Compl. ¶ 17 (LinkedIn used data "to fuel various services offered via LinkedIn's Marketing Solutions."). These allegations say nothing at all about LinkedIn's actual use of any data for its "own marketing purposes." The only plausibly relevant allegation is Plaintiff's assertion that LinkedIn "is able to target its account holders for advertising." Compl. ¶ 27. But nothing she pleads suggests that LinkedIn actually does so or otherwise renders this bare allegation plausible. *Valenzuela*, 2023 WL 8424472, at *8; *Holmes High Rustler, LLC v. Gomez*, 2015 WL 4999737, at *4 (N.D. Cal. Aug. 21, 2015) ("[T]he Court does not consider facts alleged for the first time in opposition to a motion to dismiss."). Her allegations are nothing like those courts have found sufficient based on *Javier*, Mot. at n. 3 (collecting authorities), and do not save her claim from dismissal. Mot. at 7 (collecting authorities); *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1003 (N.D. Cal. 2024) (dismissing where plaintiff's "conclusory allegations fail to state sufficient factual allegations to support an inference that Kustomer is capable of using the intercepted information for another purpose").

***Third***, even if Plaintiff had plausibly alleged use or capability of use, her claims would still fail because none of her allegations are tethered to ***ReflexMD***. Plaintiff's claims that her allegations are sufficient because she generally describes Insight Tag technology and alleges: (1) she purchased Semaglutide from ReflexMD's website and (2) that ReflexMD installed the Insight Tag. Opp. at 8. That is besides the point. Nowhere does Plaintiff meaningfully describe how LinkedIn purportedly used ***her*** data or ***any data from ReflexMD's website***. *See e.g.,* Mot. at 9 (citing *Cody,* 718 F. Supp. 3d 1002-3). Plaintiff attempts to distinguish *Doe*, which dismissed claims based on healthcare websites' use of Google Analytics, claiming it is irrelevant because she specifically alleges the Insight Tag is embedded on ReflexMD's website. Opp. at 8. But the *Doe* Court further observed that the complaint "relie[d] heavily on Google's own product descriptions" and lacked allegations as to "how the plaintiffs' various providers are *actually* using Google's products." *Doe v. Google LLC*, 2024 WL 3490744, at *3 (N.D. Cal. July 22, 2024). That is true here; Plaintiff does not describe how ReflexMD used the Insight Tag or plead that she saw any advertising based on her (or any specific user's) Insight Tag data, and her claims should be dismissed.

***Fourth***, instead of addressing these deficiencies, Plaintiff extensively summarizes a pair of

decisions by Judge Pitts, neither of which is dispositive. Specifically, Plaintiff does not meaningfully address LinkedIn's arguments as to why the *Jackson* order does not support dismissal here, other than to concede that she wholly plagiarized whole swaths of the *Jackson* complaint to strategically avoid dismissal. (Mot. at 9; Opp. at 6; *compare Jackson v. LinkedIn Corp.*, Case No. 5:24-cv-00812, ECF No.1 at ¶¶ 20-26 (N.D. Cal. Feb. 9, 2024) to Compl. ¶¶ 14-20 (reflecting identical allegations).) This argument merely reinforces the conclusory nature of Plaintiff's allegations: Where a plaintiff "pleads at such a high level of generality that it is possible to copy and paste a complaint word-for-word . . . by definition he is pleading without the factual specificity necessary to state a claim for relief." *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1060-61 (C.D. Cal. 2023). Further, Plaintiff urges the Court to rely on *Smith v. Google, LLC*, but that case only underscores the paucity of Plaintiff's allegations here. In *Smith*, Judge Pitts denied dismissal because the complaint pled Google was an independent third party based on more specific allegations regarding use—including that Google allegedly intercepted data from tax websites to "power its algorithms" and compile "a detailed dossier, or digital fingerprint . . . for the benefit of Google[.]" 2024 WL 2808270, at *4 (N.D. Cal. June 3, 2024); *Smith v. Google*, No. 23-cv-3527-PCP, ECF No. 35 ¶ 29 (N.D. Cal. Oct. 9, 2023). No such allegations are pled here.[2]

**2. Plaintiff's Claim Under Section 631 Clause 1 Fails.**

Plaintiff asks this Court to ignore a sea of adverse precedent refusing to apply clause-one of Section 631 to internet communications. Mot. at 10 (collecting authorities). The Court should

---

[2] Plaintiff's authorities are distinguishable as each allege facts more specific than those pled here. Opp. at 7-8 (citing *Gladstone v. Amazon Web Servs., Inc.*, 2024 WL 3276490, at *6 (W.D. Wash. July 2, 2024) (defendant's service terms explicitly disclose independent use of data to improve its own services); *Turner v. Nuance Commc'ns, Inc.*, 2024 WL 2750017, at *10 (N.D. Cal. May 28, 2024) (defendant developed "AI Risk Engine" used to analyze customer voices and input recorded voice prints into its own "massive database" used to recognize voices); *Heerde v. Learfield Commc'ns, LLC,* 2024 WL 3573874, at *7 n.6 (C.D. Cal. July 19, 2024) (plaintiffs specifically alleged how defendants "share [plaintiffs] communications with third parties for profit.")

deny that request. "[C]ourts have consistently interpreted this first clause as applying only to tapping communications over telephones and not through the internet." *Ramos v. The Gap Inc.*, 2024 WL 4351868, at *3 (N.D. Cal. Sept. 30, 2024) (collecting authorities). Unsurprisingly, Plaintiff cannot muster legal support for her position. Opp. at 9. *Jackson* and *Shah v. Fandom, Inc.* does not even involve clause 1 claims, and contrary to Plaintiff's representation, *Matera v. Google* finds "the second clause of section 631, *as opposed to the first clause*, is not limited to communications passing over telegraph or telephone wires, lines, or cables." 2016 WL 8200619, at *18 (N.D. Cal. Aug. 12, 2016) (emphases added).[3] Plaintiff's lone authority, *Kauffman*, has been rejected as an outlier. *Ramos*, 2024 WL 4351868 at *3 (noting the lack of authority in accord with *Kauffman* and "disagree[ing] with *Kauffman*'s brief analysis").

**3. Plaintiff's CIPA Clause 2 Claim Fails for Myriad Independent Reasons.**

***Read or Attempt to Learn Contents.*** Relying on the same general allegations discussed above, Plaintiff argues that LinkedIn attempted to read or learn the contents of her communications because it is purportedly "able to make extremely personal inferences," and that LinkedIn "enables 'in-depth campaign reporting'" and generally uses unspecified "personal information and communications" to "fuel various services offered via LinkedIn's Marketing Solutions[.]" Opp. at 10. Nowhere does Plaintiff plausibly allege that LinkedIn ever read or attempted to learn the contents of ***her*** communications, that she received targeted ads based on her Semaglutide purchases, or that LinkedIn ever used ***any*** data from ReflexMD—health-related or otherwise. *Love v. Ladder Fin., Inc.*, which Plaintiff does not acknowledge, illustrates the deficiency in Plaintiff's pleading. There, though the plaintiff pointed to more specific allegations than those pled here—*i.e.*, that Fullstory stated that it "may use and share information in an aggregated and de-identified manner at [its] discretion"—the court found the complaint insufficient, as it provided "no coherent story of how or why FullStory would learn such granular information[.]" 2024 WL 2104497, at *2 (N.D. Cal. May 8, 2024). Similarly, here, Plaintiff has offered "no coherent story" to explain why

---

[3] *Jackson*, 2024 WL 3823806, at *5 (N.D. Cal. Aug. 13, 2024) (addressing CIPA clauses 2 and 3); *Shah*, 2024 WL 4539577 at *4 (N.D. Cal. Oct. 21, 2024) (addressing § 638.52 claim).

LinkedIn is purportedly attempting to learn the contents of ReflexMD data for its own purposes.

***In Transit***. Plaintiff's rebuttal to LinkedIn's argument only confirms that she fails to plead the alleged communications were intercepted "in transit." Plaintiff again misleadingly describes her own allegations, none of which describe *when* her alleged communications were intercepted. Opp. at 11 (citing Compl. ¶¶ 23-25 (stating only that an HTTP request "is sent" while user is browsing)); 43-45 (alleging interception shows what user "was viewing" and selection users "were making"). Referencing the same allegations, Plaintiff further argues that she pleads that "the function of the LinkedIn Insight Tag duplicated the communications with the Website and sent the same to LinkedIn," but those allegations are also nowhere found in her Complaint. Opp. at 11.

Plaintiff's only authorities do not help her. *Valenzuela* included far more detailed allegations than those alleged, including an explicit reference to "real time interception," "detail on how it occurs" and "statements from Akamai regarding '[r]eal-time insights' and [how] data from every use event [is] '*collected as it happens.*'" 686 F. Supp. 3d at 978. *Jackson* is even less relevant; the Court's order did not address whether "in transit" was adequately alleged.

***Willful***. To avoid dismissal, Plaintiff points to allegations that are entirely conclusory. Opp. at 11 (citing Compl. ¶¶ 3, 7, 33 (stating that "LinkedIn intentionally intercept[s]" "sensitive" and "confidential" data and "knew" that it intercepted each of a user's interactions on unspecified "Websites")). These allegations do not suffice, particularly given that judicially noticeable documents show that Google specifically ***instructed the DMV not to send it personally identifiable information***. *Doe*, 2024 WL 3490744, at *4 (dismissing CIPA claims on this basis).[4]

Plaintiff points to *Smith* and *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023), in which courts refused to consider such agreements and determined intent was a factual question. Opp. at 11-12. LinkedIn respectfully submits that Judge Chhabria's reasoning in rejecting this conclusion was sound and correct: "If a plaintiff alleges that the clients of a source code provider use the code contrary to the provider's instructions, the plaintiff should not be able to get around the intent requirement by simply intoning that the source code provider intended for the

---

[4] Plaintiff waived any objection to these documents by failing to oppose LinkedIn's RJN.

clients not to follow instructions." *Doe*, 2024 WL 3490744, at *5.

***Sent or received within California***. Plaintiff offers no meaningful rebuttal to LinkedIn's argument that CIPA's second clause applies only to communications intercepted "within this state." Plaintiff—a Florida resident with no apparent ties to California—attempts to bypass this requirement by arguing that this requirement applies in the disjunctive with the "in transit" requirement. Such a reading is illogical, and if true, would mean that the statute could apply to ***all communications anywhere in the world, so long as they are intercepted "in transit."*** The only plausible interpretation of California's wiretap act is that the phrase "at any place within this state" applies to all communications within the statute's reach. *Valenzuela v. Super Bright*, 2023 WL 8424472 *10 (C.D. Cal. Nov. 27, 2023) (holding that these requirements are conjunctive; interpreting statute and finding that "the repetition of the word 'is' suggests that the word 'while' applies to both the phrase 'in transit or passing over any wire, line, or cable' and the phrase 'being sent from, or received at any place within this state.'") Plaintiff's lone authority, *Doe v. Meta Platforms*, found plaintiffs adequately alleged that "plaintiffs' information was being sent to or received from a place in this state" because the intervening party, Meta, "designed and effectuated its scheme to track [the communications] from California." 690 F. Supp. 3d at 1080.[5] No such allegations are pled here, and in any case, this reading is contrary to the plain language of the statute, which requires the ***underlying communication*** be transmitted within the state.

**4. Plaintiff's CIPA's Clause 3 Claim Is Also Doomed.**

Plaintiff does not contest, and thus concedes, that her clause 3 claim cannot stand unless she pleads a viable clause 2 claim. *Jones v. Regents of Univ. of Cal.*, 2022 WL 1137089, at *2 (N.D. Cal. Apr. 18, 2022), *appeal dismissed*, 2023 WL 7480118 (9th Cir. June 6, 2023) (arguments not raised in opposition are waived). As explained above, nothing in Plaintiff's pleading plausibly alleges that LinkedIn used ***her*** data—or any data from the ReflexMD—for any advertising or marketing purposes. Her clause 3 claim fails for this same reason.

---

[5] Plaintiff's argument that this requirement is satisfied because there is a California choice-of-law clause in LinkedIn's User Agreement makes no sense, as that is irrelevant to the claim's elements.

### B. Plaintiff Does Not Plead a Viable Section 632 Claim.

Plaintiff's Opposition does not persuasively rebut LinkedIn's arguments that her Section 632 claim fails because (1) Plaintiff has not plausibly alleged intent, (2) software is not a device, and (3) the underlying communications were not confidential.

***Intent***. Plaintiff regurgitates the same allegations cited above and argues that LinkedIn "intended to record Plaintiff's confidential communications" by "permit[ting] ReflexMD to install the Insight Tag[.]" Opp. at 14; Mot. at 14. The factual inference she asks the Court to draw is not plausible. Plaintiff's own pleading and documents properly before the Court establish: (1) that ReflexMD—not LinkedIn—controls its installation of the Insight Tag;[6] and (2) LinkedIn expressly cautioned advertisers ***not*** to transmit sensitive information via the Insight Tag. In any case, Plaintiff cites no authority for her novel theory that such passive action is sufficient to allege LinkedIn recorded her website interactions "with the ***purpose*** *or* ***desire*** of recording a confidential conversation, or with the ***knowledge to a substantial certainty*** that his use of the equipment will result in the recordation of a confidential conversation." *People v. Superior Court*, 70 Cal. 2d 123, 134 (1969) (emphases added). Indeed, her cited authorities only underscore that to plead intent under Section 632, the plaintiff must allege detailed facts showing that the defendant took an affirmative step to receive the challenged information. *See Rojas v. HSBC Card Servs. Inc.*, 20 Cal. App. 5th 427, 430 (2018) (employer intentionally recorded employee calls directly and issued a policy describing that it may record personal calls); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 810, 816 (N.D. Cal. 2020) (Google allegedly directly recorded plaintiffs' communications, had a means of identifying communications that were improperly obtained, and chose to continue to use them for advertising and other purposes "even after they bec[ame] aware of their provenance."); *Doe v. Meta Platforms*, No. 22-CV-03580-WHO, Dkt. No. 185 ¶ 124 (N.D. Cal. Feb. 21, 2023) (alleging Google had a marketing division dedicated to getting health providers to use Meta's Pixel and "urge[d] health care providers and other covered entities to use the Pixel and other Meta tools to target ads to patients"). No such facts are pled here.

---

[6] Mot. at 7 citing (Reddy Decl. Ex. A, cited in Compl. n. 17; Compl. ¶ 22).

Plaintiff's only other rebuttal is to baldly state that LinkedIn "willingly incorporated the information into its algorithms and used it for the purpose of augmenting its advertising machinery…[and] as a means for targeting them for advertising." Opp. at 15. Plaintiff offers no citation for this argument, with good reason: it is not in the Complaint.

***Device***. Plaintiff's only rejoinder to LinkedIn's argument that software is not a device (Mot. at 15 (collecting authorities)) is to cite *Libman v. Apple*, in which this Court denied dismissal of a section 632 claim. But Plaintiff offers no response to LinkedIn's argument that the authorities on which *Libman* relies were flawed because they invoked the specific definition of "device" in the Wiretap Act, which has no application to CIPA. Mot. at 16. *Libman* is not dispositive; indeed, this Court has previously observed that "[s]oftware like Google Maps, Chrome, etc. are not 'devices' within the meaning of CIPA because they are not 'equipment.'" *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019) (citation omitted). That conclusion is supported by the principle that courts "are required to interpret [a statute's] terms consistent with the statutory scheme of which it is a part." *Ibarra v. City of Carson*, 214 Cal. App. 3d 90, 96 (1989). For example, in enacting Section 638.51 of CIPA in 2015 the legislature distinguished between "process" and "device"—further recognizing that software is not encompassed by the term "device." *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023) (finding software fits under "process" rather than "device" prong of CIPA § 638.51); *Shah*, 2024 WL 4539577, at *2 (holding same).

***Confidential communications***. Plaintiff does not deny that internet communications are presumptively ***not*** confidential under Section 632, arguing instead that her communications justify departure from this rule as "protected health information." Opp. at 16. But Plaintiff's only cited authority addresses "[c]ommunications made in the context of a patient-medical provider relationship" which is "protected health information under HIPPA." *Id.* at 16-17 (*quoting In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 779 (N.D. Cal. 2022)). Nothing in the Complaint indicates that such communications took place. Plaintiff alleges she completed a survey that asks about her gender, height, weight, and "goals," to determine if she "qualifies" for the medication. Compl. ¶¶ 35-40. Nowhere does Plaintiff allege she actually communicated with a medical provider, and Plaintiff has provided no authority suggesting this is "protected health information"

qualifying for an exception to the presumption that online communications are not confidential.

**C. Plaintiff Has Not Alleged Interception of Communications.**

Plaintiff's CIPA claims fail because she does not allege LinkedIn intercepted communications. Plaintiff does not engage with *Vita v. New England Baptist Hospital* at all, other than to state that the case is non-binding because it involved application of Massachusetts wiretap statute.[7] There, the plaintiff alleged that defendant hospitals intercepted information about their search for doctors, "search for information on particular symptoms, conditions, and medical procedures." 494 Mass. 824, 828 (2024). Like CIPA, the Massachusetts statute does not define communication. And, like CIPA, the statute is penal in nature. Thus, under the Rule of Lenity, "defendant is entitled to the benefit of any rational doubt" regarding the statute's application. *Id.* at 847. As *Vita* found, the "commonsense" meaning of communications is "person-to-person conversations and messaging"; no such communications are pled here, and the Court should dismiss Plaintiff's section 631 and 632 claims for this independent reason.

**D. Plaintiff Fails to State a Claim for Constitutional Invasion of Privacy.**

**1. The Complaint Does Not Implicate Specific "Medical Information."**

Plaintiff first argues that medical information can be the subject of a protected informational privacy interest.[8] Opp. at 18-19. This argument misses the point. LinkedIn acknowledged that patients may have privacy interests in ***certain*** medical information. *See* Mot. at 19; Opp. at 19. It argued that the challenged information in Plaintiff's Complaint is not medical information at all.

---

[7] Plaintiff also obliquely suggests that her allegations are more robust than those in *Vita* because she alleges Defendant intercepted "information about which page on the ReflexMD Website the patient was viewing" and "selections they were making." Not so. The allegations in *Vita* are closer to medical information than what is pled here. 494 Mass. 824, 833 (2024) (alleging defendant intercepted plaintiff's "search[es] for information related to doctors and symptoms").

[8] Plaintiff never rebutted LinkedIn's argument that she fails to allege an autonomy privacy interest (Mot. at 20-21), waiving that objection. *Jones v. Regents of Univ. of Cal.*, 2022 WL 1137089, at *2 (N.D. Cal. Apr. 18, 2022), *appeal dismissed*, 2023 WL 7480118 (9th Cir. June 6, 2023).

Plaintiff's first rejoinder to that argument is a handwaving assertion that it "fails for the reasons set forth in Section III.A.3." Opp. at 19. But Section III.A.3 nowhere establishes that the challenged information is medical information; it merely states in passing that "communications between Plaintiff and the Website . . . included Plaintiff's confidential health and prescription information." Opp. at 10. Not only is this insufficient to establish a medical privacy interest, (as discussed below) the Complaint's allegations do not support this assertion.

Plaintiff next attempts to suggest that medical information is at issue by once again impermissibly arguing facts never alleged. She states, for the first time, that the Insight Tag captured "***Plaintiff's*** . . . responses to ReflexMD's pre-screening survey." Even setting aside that the survey contains only generic, pre-defined selections rather than health information particular to an individual (Mot. at 19-20), Plaintiff in fact never alleges that ***she*** took the survey. (*Id.*) Plaintiff's allegations about survey information LinkedIn could have received from "consumers" are insufficiently particularized to meet the pleading standard. (Mot. at 18-19.) Plaintiff may not amend her deficient Complaint by simply misstating what is in it.

LinkedIn also argued that Plaintiff's Complaint does not allege receipt of information showing a purchase of Semaglutide, but only that some purchase was made on ReflexMD's website. (Mot. at 20.) Plaintiff attempts to overcome this deficiency by arguing that "Semaglutide is the only product offered for sale on the Website." Opp. at 20. This is not enough. Plaintiff never alleged that LinkedIn received any information establishing that Semaglutide is the sole ReflexMD offering, nor that LinkedIn's systems would have automatically divined this information. Plaintiff also does not allege any independent support for this claim, such as claiming that, after interacting with ReflexMD's website, she saw targeted advertisements for weight loss drugs. *Compare, e.g.*, *In re Meta Pixel Healthcare Litig.*, No. 3:22-cv-3580-WHO, ECF No. 49 ¶¶ 187-190 (N.D. Cal. Aug. 25, 2022) (expert declaration showing fifteen pages of targeted advertisements received after visiting healthcare websites), *with* Compl. (no similar allegation).

Further, Plaintiff's authorities purportedly showing that the information at issue here is "protected by law" are inapposite. 42 U.S.C. § 1320(d) defines "health information" in the context of the Health Insurance Portability and Accountability Act (HIPAA), which applies only to a

"health plan," "health care clearinghouse," or "health care provider," which ReflexMD is not. 42 U.S.C. § 1320(a).[9] For example, *Cousin v. Sharp Healthcare* applies HIPAA's definition of "protected health information" ***to a healthcare provider***—the defendant in that case "operate[d] multiple hospitals and medical groups, and offer[ed] a healthcare plan." 702 F. Supp. 3d 967, 971 (S.D. Cal. 2023). Additionally, *Cousin* involved disclosure of qualitatively different information—searches by specialty for a primary care physician, and searches that "set forth [the plaintiffs'] ***particular medical conditions***." *Id.* at 973. By contrast, as LinkedIn has pointed out, Plaintiff does not allege that Semaglutide treats a specific infection or illness, but rather that it addresses a range of generic "goals," some of which (*e.g.*, "[l]ooking better" or "[i]mprov[ing] confidence") are not medical at all. (Mot. at 24 (quoting Compl. ¶ 40).)

Finally, the portion of the *Robbins v. Mscripts, LLC* arbitration order Plaintiff cites merely parrots the plaintiff's claim that the alleged protected health information there included prescription medications, in an opening summation of the complaint. 2023 WL 5723220, at *1 (N.D. Cal. Sept. 5, 2023) (citing *Robbins*, 23-cv-1381, ECF No. 1 at 5-6 (N.D. Cal. Mar. 23, 2023)). It did not analyze whether all prescription information automatically qualifies as protected health information, much less hold that it does. Further, the "prescription information" at issue in that case included "names, dates of birth, phone numbers, addresses, prescription numbers, medication names, originating pharmacy information, health insurance company names, member IDs, group numbers and dependents' names"—a far cry from the mere fact that an unspecified purchase was made on ReflexMD's website. *Robbins*, 23-cv-1381, ECF No. 1 ¶ 3 (N.D. Cal. Mar. 23, 2023).

Because Plaintiff's allegations do not implicate any specific medical information and she offers no authority showing that the consumer information actually at issue creates an informational privacy interest, she has failed to sufficiently allege this necessary element of her claim.

**2. Plaintiff's Inapposite Authorities Confirm that She Had No Reasonable Expectation of Privacy Here.**

Plaintiff's argument that she had a reasonable expectation of privacy in the information at

[9] "Health care provider" under HIPAA refers to a highly specific subset of providers as listed at 42 U.S.C. § 1395x, none of which suggest that ReflexMD is such an entity. 42 U.S.C. § 1320d(3).

issue here relies on distinguishable authorities that provide no support for her position. *In re Facebook, Inc. Internet Tracking Litig.* involved Facebook plug-ins on "countless websites" collecting "an enormous amount" of logged-out data, which Facebook allegedly then "compile[d]" to create "cradle-to-grave profile[s] without users' consent." 956 F.3d 589, 589-99, 603 (9th Cir. 2020). Facebook's practices are worlds away in degree and kind from the limited collection of generic information from a single website at issue here. Further, the Ninth Circuit based its finding that the plaintiffs had a reasonable expectation of privacy in the broad swaths of information at issue on the allegation that Facebook not only failed to disclose this logged-out tracking but, to the contrary, "set an expectation that logged-out user data would not be collected" and wholly failed to "disclose the ***extent*** of information collected." *Id.* at 602-03 (emphasis added). By contrast, here, as argued, LinkedIn's disclosures clearly cover "interactions" with third-party websites, and Plaintiff's allegations in no way implicate vast quantities of information. (Mot. at 22).

Likewise, *In re Meta Pixel Healthcare Litigation* involved quintessential "medical information," including "patient status and the content of patient communications with their medical providers, including when they register, log-in and logout of patient portals and set up appointments." 3:22-cv-3580, ECF No. 1 ¶ 8 (N.D. Cal. June 17, 2022). It was only on these facts that Judge Orrick found Facebook's disclosures of third-party tracking insufficient to rebut a reasonable expectation of privacy: Judge Orrick reasoned that because this information, pulled from health care providers' websites, constituted "'protected health information' within the meaning of HIPAA," Facebook's failure to obtain HIPAA-compliant authorization contradicted its representation that it requires third parties to have "lawful rights to collect, use and share" plaintiffs' data. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 791, 794. As explained above, the challenged information here is not HIPAA-covered information, but "general internet browsing" information—which Judge Orrick suggested plaintiffs ***agreed*** could be shared. *Id.* at 793-94. Plaintiff's reliance on *Meta Pixel* is flawed for another reason as well. Her assertion that LinkedIn misrepresented that it would "only collect and process personal data" where it has "lawful bases" (Opp. at 21) merely assumes that her core theory of liability against LinkedIn is true. In other words, Plaintiff's argument proves nothing about LinkedIn violating its representations to its users where

that supposed violation relies on an ***unproven assumption*** that the disclosure was unlawful.

**3. The Lack of Allegations Supporting a Highly Offensive Invasion Independently Merits Dismissal.**

LinkedIn showed that Plaintiff never alleged a highly offensive intrusion on her privacy. (Mot. at 22-25.) Plaintiff's claim that this question cannot be resolved on a motion to dismiss (Opp. at 21) ignores the authorities LinkedIn cites in which courts dismissed cases due to deficient allegations of highly offensive conduct (*see* Mot. at 23)—***even where*** "private medical information" was at issue. *Ojeda v. Kaiser Permanente Int'l, Inc.*, 2022 WL 18228249, at *6 (C.D. Cal. Nov. 29, 2022). Plaintiff's citations to *In re Google Location Hist. Litig.* and *Facebook Internet Tracking*, both of which involve systematic tracking and misrepresentations, show only that dismissal at the pleading stage may be inappropriate on very different facts than those alleged here. *See In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1158 (N.D. Cal. 2021) (collection of comprehensive geolocation data notwithstanding opt-out selections); *In re Facebook Internet Tracking Litigation*, 956 F.3d 598, 602-03 (9th Cir. 2020) (comprehensive tracking of logged-out internet activity directly contradicting disclosures). And *Mastel v. Miniclip SA*, inexplicably cited by Plaintiff, ***dismissed*** Mastel's invasion of privacy claims ***because the complaint there failed to sufficiently allege highly offensive conduct***. 549 F. Supp. 3d 1129, 1142 (E.D. Cal. 2021). Plaintiff's failure to allege a risk of serious harm, receipt of especially sensitive information, or any culpable motive mandate the same result here. (Mot. at 22-25.)

*In re Meta Pixel Healthcare Litigation* does not aid Plaintiff. She cites this case for its suggestion that alleged receipt of HIPAA-protected information in contravention of stated policies may be adequate to survive a motion to dismiss. Opp. at 22. However, first, as argued, HIPAA-protected information is not at issue, and Plaintiff fails to allege that LinkedIn acted contrary to its express representations. *Supra* II.D.1-2. Second, the cited opinion is an order ***denying*** the plaintiffs' motion for a permanent injunction, and thus makes no determination that the plaintiffs' allegations there sufficed to survive a motion to dismiss. 647 F. Supp. 3d at 801.

Plaintiff's attempt to correct her Complaint's failure to allege any culpable motive likewise fails. First, she states that "questions of intent are generally questions of fact." Opp. at 22. But her

sole citation for this assertion does not even involve invasion of privacy claims: *Oddo* is an order denying the defendant's motion for summary judgment on fraud claims, in which the court concluded that discovery had not yet foreclosed the possibility that the defendant had an intent to deceive. *Oddo v. United Technologies Corp.*, 2022 WL 577663, at *16 (C.D. Cal. Jan. 3, 2022). This has no bearing on the propriety of dismissal at the pleading stage on the basis that a plaintiff has failed to support allegations of a highly offensive intrusion with sufficient allegations of intent.

Plaintiff's other citations to *In re Vizio* and *In re Nickelodeon* are also inapposite because they (1) rest on a defendant's disregard for its customers' privacy choices and (2) do not even discuss intent. Opp. at 23. In *In re Vizio*, the defendant collected customers' information through its "Smart Interactivity" software ***even if customers turned the feature off***. *In re Vizio, Inc. Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017) (noting that because "Smart Interactivity's 'off' function was not operational 'for months, if not years,'" "even if consumers believed they had opted out of Vizio's data collection practices, Vizio was still collecting their data.") There is no such allegation here. Moreover, *In re Vizio* never discusses allegations of intent.

Similarly, *In re Nickelodeon* irrelevantly suggests that allegations of "***duplicitous tactics***" that encourage use of a service "***under false pretenses***" may be sufficient to suggest highly offensive data practices, and does not address intent at all. *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 295 (3d Cir. 2016). *In re Nickelodeon* finds sufficient allegations of highly offensive conduct by Viacom (which owned Nickelodeon at the time) where Nickelodeon's website displayed the message, "HEY GROWN-UPS: We don't collect ANY personal information about your kids[,]" yet in fact collected personal information about children through Google's third-party cookies. *Id.* at 269, 295. Notably, as to defendant Google, the Third Circuit explained that "courts have long understood that tracking cookies can serve legitimate commercial purposes," and notwithstanding the result that children were tracked, Google's use of third-party cookies "on Nick.com in the same way that it deploy[ed] cookies on myriad other websites" was "***not sufficiently offensive . . . to survive a motion to dismiss***." *Id.* at 294. Here, too, as argued, because LinkedIn's alleged conduct falls squarely within the bounds of routine commercial behavior (Mot. at 24-25), it is not highly offensive as a matter of law.

Dated: December 17, 2024

COOLEY LLP

By: *s/ Jeffrey M. Gutkin*
Jeffrey M. Gutkin

Attorney for Defendant
LINKEDIN CORPORATION